**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| MAHMOUD KHALIL,<br><br>*Petitioner*,<br><br>v.<br><br>DONALD TRUMP et al.,<br><br>*Respondents*. | No. 25-cv-01963 (MEF)(MAH)<br><br>**OPINION and ORDER** |

\* \* \*

For the purposes of this brief Opinion and Order, the Court assumes familiarity with the facts and procedural history of this case.

\* \* \*

On June 11, the Court preliminarily enjoined the Respondents "from seeking to remove the Petitioner from the United States based on the Secretary of State's determination." Khalil v. Trump, 2025 WL 1649197, at *6 (D.N.J. June 11, 2025).

The Petitioner sought clarification as to how the June 11 preliminary injunction applies in certain particular circumstances. See Petitioner's Letter (July 1, 2025) (ECF 332).

As to that question, the parties filed letter briefs, see Petitioner's Letter (July 11, 2025) (ECF 347), Respondents' Letter (July 15, 2025) (ECF 349), the Court issued an Opinion and Order, see ECF 350, and the parties filed supplemental materials. See Petitioner's Brief (July 17, 2025) (ECF 352); Respondents' Brief (July 17, 2025) (ECF 353); Petitioner's Reply Brief (July 17, 2025) (ECF 354).

The Court writes briefly here to clarify in three ways the meaning of its June 11 preliminary injunction.

\* \* \*

First.

Under the June 11 preliminary injunction, the Respondents must cause the immigration judge to promptly vacate or amend her June 20 decision to the extent it finds the Petitioner removable from the United States on the 8 U.S.C. § 1227(a)(4)(C) charge, which charge rests on the Secretary of State's determination.

The reason for this is straightforward.

In accord with the June 11 preliminary injunction, the June 20 decision simply should not have included any finding that the Petitioner can be removed from the United States on the Section 1227 charge.

At bottom, the core purpose of such a finding is to advance the process of removing the Petitioner from the United States on the referenced charge.

And there is no meaningful real-world difference between that and what the June 11 preliminary injunction explicitly forbade. See Khalil, 2025 WL 1649197, at *6 ("Respondents are preliminarily enjoined from seeking to remove the Petitioner from the United States based on the Secretary of State's determination.").

In short: issuance of the Section 1227 finding was directly inconsistent with the June 11 preliminary injunction.[1]

---

[1] In recent weeks, the Respondents have apparently contended that the Court's June 11 preliminary injunction was forward-looking only, and that it therefore does not require any backward-looking undoing of actions already taken. See Respondents' Letter (July 15, 2025) at 3. The Respondents do not seem to make that argument now. See Respondents' Brief (July 17, 2025). But one way or another, the argument misses the mark. The June 20 immigration court finding came down after this Court's June 11 preliminary injunction. It should not have been made. The Court, today, needs to take a backward-looking action --- to reach back and compel the June 20 decision to be vacated or amended --- because the June 11 preliminary injunction was not properly complied with. That has nothing to do with whether the June 11 preliminary injunction did or did not include a backward-looking aspect; as of June 11, the June

2

And the underlying equities here, see ECF 350 at 3-4, make clear that the June 11 preliminary injunction should be interpreted and applied as written.

The Petitioner has filed a declaration that sets out harms he continues to face because of the Secretary of State's determination and the Respondents' efforts to remove him on that basis --- even after this Court's June 11 preliminary injunction.  See Declaration of Mahmoud Khalil (July 16, 2025) (ECF 352-2) ¶¶ 3-9, 12.

The Respondents have not contested the Petitioner's declaration.  And the immigration judge, before whom the Petitioner testified in person, described him as "credible."  In the Matter of Mahmoud Khalil (June 20, 2025) (ECF 333) at 17.

Against this backdrop, the Court generally credits the Petitioner's declaration and finds as a factual matter that the continued post-June 11 efforts to remove him from the United States on the Section 1227 charge are causing various types of harm.  Reputational harm.  See Declaration of Mahmoud Khalil ¶¶ 3, 7.  Professional harm.  See id.  And the chilling of speech.  See id. ¶¶ 5-6.

These can count as irreparable injury, see Khalil, 2025 WL 1649197, at *2-5, and the Court finds as a factual matter that they do here.

Moreover, the Petitioner persuasively argues that if the Section 1227 finding remains in the immigration judge's June 20 decision, the Board of Immigration Appeals would simply have no choice under existing case law but to affirm it.  See Khalil v. Joyce, 2025 WL 1232369, at *41-42 (D.N.J. Apr. 29, 2025); Petitioner's Brief (July 17, 2025) at 4 (citing declarations).

And once the Board decides the Petitioner's appeal, he will be subject to a final order of removal, losing his status as a lawful permanent resident and therefore his ability to work.  See Petitioner's Brief (July 17, 2025) at 4 (citing declarations).  The Respondents have disputed none of this, and the Court credits it.

---

20 decision had of course not yet been issued.  Even if the June 11 preliminary injunction had only prospective effect, the June 20 decision should not have included the Section 1227 removal finding.

3

Bottom line: the June 20 decision must be vacated or amended, to the extent stated above.

\*   \*   \*

Second.

Under the June 11 preliminary injunction, the Respondents do not need to cause the immigration judge to revisit the determination she made in the June 20 decision as to the Petitioner's eligibility for asylum under 8 U.S.C. § 1158.

The immigration judge conducted an extensive and close written analysis of the asylum issue, spanning six single-spaced pages and based on live testimony. See In the Matter of Mahmoud Khalil at 14-16, 21-26.

In light of this, the immigration judge concluded that the Petitioner is not eligible for asylum --- for reasons that she explicitly stated are not based on the Secretary of State's determination. See id. at 21.

That conclusion is independent of the Secretary of State's determination. Therefore, it is not at odds with the Court's June 11 preliminary injunction, which ordered relief only as to the determination.[2]

---

[2] The Petitioner takes a different view. He notes that asylum was also denied by the immigration judge on another ground, the Secretary's determination. See Petitioner's Letter (July 11, 2025) at 1, 3 (citing In the Matter of Mahmoud Khalil at 20-21). And the Petitioner argues that if that other ground is left in place, then the Board of Immigration Appeals might affirm the June 20 decision on that ground --- and ignore the immigration judge's independent, factual asylum analysis. See Petitioner's Letter (July 11, 2025) at 3. If the Board of Immigration Appeals opts to one day go down that road, the Petitioner can then seek relief from this Court. But the Board of Immigration Appeals deserves this Court's respect. And this Court will not proceed on the assumption that the Board will at some point take a step that would (a) be in some tension with this Court's June 11 preliminary injunction and (b) not engage with the extensive and independent asylum analysis undertaken by the immigration judge. More generally, the Respondents are right to note that federal immigration law aims to preserve a wide swath of Executive Branch discretion and autonomy. See Respondents'

4

\* \* \*

Third.

Under the June 11 preliminary injunction, the Respondents must cause the immigration judge to consider in an appropriately full and thorough manner, and then determine: (i) whether the Petitioner should be granted a waiver of removability, see 8 U.S.C. § 1227(a)(1)(H), in connection with the charge lodged against him as to his alleged failure to accurately complete his lawful permanent resident application ("LPR Charge"), and (ii) whether the Petitioner should be afforded an evidentiary hearing in connection with the immigration judge's assessment of his waiver-of-removability arguments.

The Respondents must ensure that, in doing the things set out in the preceding paragraph, the immigration judge gives no consideration to the Secretary of State's determination that the Petitioner is removable from the United States under 8 U.S.C. § 1227(a)(4)(C).

The basis for the above is again straightforward.

The June 11 preliminary injunction prohibited removal of the Petitioner from the United States "based on the Secretary of State's determination."

As the Court has noted, the June 11 preliminary injunction "is not qualified."  ECF 350 at 2.  "It covers all efforts," including "[t]hose that as a practical matter meaningfully rely on the Secretary's determination."  Id.

The Court finds as a factual matter that the Respondents' efforts to remove the Petitioner from the United States on the LPR Charge "meaningfully rely on the Secretary's determination."

---

Brief (July 17, 2025) at 3.  And the Respondents are also right to note that district courts such as this do not have appellate jurisdiction over the Executive's immigration tribunals.  See Respondents' Letter (July 15, 2025) at 1-3.  All of that weighs against this Court becoming more involved in the functioning of the immigration courts than is strictly necessary --- and against requiring that the asylum part of the June 20 decision now be undone, based on a speculation as to how the Board of Immigration Appeals might one day proceed.

5

The Petitioner has filed multiple factual declarations on this point.[3]  Each is based on extensive experience,[4] and none has been contested by the Respondents.  The Court generally credits these declarations.

As a factual matter, the declarations establish the following:

- As to the LPR Charge, Section 1227(a)(1)(H) permits a waiver of removability for someone who "is the spouse [and] parent . . . of a citizen of the United States."  See Doyle Declaration ¶¶ 19-20; Tolchin Declaration ¶ 6; Kurzban Declaration ¶ 15.  The Petitioner fits into this category.  See Declaration of Mahmoud Khalil ¶ 7.

- A request for a Section 1227(a)(1)(H) waiver is typically made by requesting an evidentiary hearing before an immigration judge.  See Doyle Declaration ¶ 23; Tolchin Declaration ¶ 8; Kurzban Declaration ¶ 16.

- That request was repeatedly made here, see Declaration of Marc Van Der Hout (ECF 352-1) ¶¶ 6, 7-8, but it was denied, see id. ¶¶ 9-16, and the immigration judge issued her decision on the LPR Charge without assessing the Petitioner's eligibility for a Section 1227(a)(1)(H) waiver.  See id. ¶ 14; see generally In the Matter of Mahmoud Khalil.

- But evidentiary hearings are typically granted to those who, like the Petitioner, are statutorily eligible for a Section 1227(a)(1)(H) waiver.  See Tolchin Declaration ¶ 13 ("[U]nder normal circumstances, where a noncitizen . . . meet[s] the eligibility criteria [of Section 1227(a)(1)(H)], and has stated their intention to pursue a § 1227(a)(1)(H) waiver, an evidentiary hearing must be scheduled[.]"); Kurzban Declaration ¶ 20 ("An

---

[3]  The relevant ones are the declarations of Kerry E. Doyle, Stacy Tolchin, and Ira J. Kurzban.  See Declaration of Kerry E. Doyle ("Doyle Declaration") (ECF 352-3); Declaration of Stacy Tolchin ("Tolchin Declaration") (ECF 352-4); Declaration of Ira J. Kurzban ("Kurzban Declaration") (ECF 352-5).

[4]  See Doyle Declaration ¶¶ 2-4; Tolchin Declaration ¶ 1; Kurzban Declaration ¶¶ 1-6; see generally Khalil, 2025 WL 1649197, at *5 (describing these declarants as having "extensive professional experience").

> Immigration Judge's refusal to hold an evidentiary hearing on a waiver for an individual who is statutorily eligible for the waiver is highly unusual and is contrary to the normal conduct of immigration court procedure.").

- This strongly suggests that the Secretary of State's determination is operating as the hurdle that is preventing an evidentiary hearing, and therefore the possibility of a waiver.

- And that suggestion is buttressed by the way that the proceedings have unfolded before the immigration judge. See Declaration of Marc Van Der Hout ¶¶ 14-15.

- Not considering a Section 1227(a)(1)(H) waiver on the LPR Charge is no academic matter. The Court finds as a factual matter that not considering a waiver increases by a meaningful margin the likelihood that the Petitioner will ultimately be removed from the United States on the LPR Charge. The next three bullet points explain why.

- Per Kerry E. Doyle: "In the normal course, as the spouse of a U.S. Citizen, and the father of a U.S. citizen child, without any criminal history, or other history of immigration violations, [the Petitioner] would be an excellent candidate for the 1227(a)(1)(H) waiver." Doyle Declaration ¶ 29. And more generally, "most lawful permanent residents with a U.S. citizen spouse and/or child, who were not otherwise inadmissible at time of adjustment to lawful permanent resident status will be granted the waiver, particularly for such a minor type of alleged fraud." Id.

- Per Stacey Tolchin: "[I]f the sole charge of removal against a noncitizen were under 8 U.S.C. § 1227(a)(1)(A), due to what is perceived as fraud and/or misrepresentation at the time that they adjusted their status, the likelihood of obtaining a waiver under § 1227(a)(1)(H) would be high where the noncitizen has close relationships to U.S. citizen and/or lawful permanent resident family members and they lack any criminal history." Tolchin Declaration ¶ 15. In her judgment, the "Petitioner easily would have [been] granted that waiver given his relationship to his U.S.

7

> citizen wife and minor U.S. citizen son, as well as his lack of criminal history." Id. ¶ 16.

- Per Ira J. Kurzban: "[W]aivers pursuant [to] 8 U.S.C. § 1227(a)(1)(H) are regularly granted to LPRs who satisfy the statutory requirements for such relief." Kurzban Declaration ¶ 22.

In short: the Court finds as a factual matter that the Secretary of State's determination is the likely reason that the Section 1227(a)(1)(H) waiver has not been ruled on --- and that not ruling on the waiver meaningfully raises the odds that the Petitioner will be removed from the United States.

This means that non-consideration of a Section 1227(a)(1)(H) waiver on the LPR Charge amounts to what the Court enjoined on June 11: "seek[ing] to remove the Petitioner from the United States based on the Secretary of State's determination." Khalil, 2025 WL 1649197, at *6.

\*   \*   \*

A final point.

Complying with what is set out above may take some time.

And the Petitioner has persuasively established that he aims to appeal from the immigration judge's June 20 decision and must do so shortly --- and that when he does, the immigration judge will lose jurisdiction over the case and would, at that point, not be able to vacate or amend the June 20 decision or to work through the waiver-of-removability issue described above. See Petitioner's Brief (July 17, 2025) at 4 (citing Tolchin Declaration ¶ 17); Puc-Ruiz v. Holder, 629 F.3d 771, 782 (8th Cir. 2010).

That would undermine the preliminary injunctive relief ordered by the Court on June 11, as clarified today.

The Court has power to ensure that its injunctive decrees are effective as a practical matter. See Nken v. Holder, 556 U.S. 418, 428 (2009); Swann v. Charlotte-Mecklenburg Bd. of Ed., 402 U.S. 1, 15-16 (1971); McComb v. Jack. Paper Co., 336 U.S. 187, 193 (1949).

Therefore, the Court orders:

8

If it appears (as seems overwhelmingly likely) that each of the steps set out in this Opinion and Order cannot be appropriately and thoughtfully completed before the close of business on July 18, then the Respondents shall promptly cause the immigration judge to take all appropriate steps on July 18 that would be required to ensure that she would not be divested of her jurisdiction over this case if a notice of appeal from her June 20 decision were filed by the Petitioner on July 19, July 20, or July 21.

These "appropriate steps" might potentially include the immigration judge timely reopening the case and vacating her June 20 decision.[5]

---

[5] In its filings of July 15 and July 17, the Respondents repeatedly suggest that the Court is "expand[ing]" its June 11 preliminary injunction. See Respondents' Letter (July 15, 2025) at 2; Respondents' Brief (July 17, 2025) at 3. This is not accurate. As the Court's July 16 Opinion and Order made clear, the plain language of the June 11 preliminary injunction generally favors the Petitioner's positions. See ECF 350 at 1-2. For example, the language of the June 11 preliminary injunction clearly supports vacating or amending the June 20 decision to eliminate its Section 1227 finding --- because, in light of the language of the June 11 preliminary injunction, that finding simply should not have been made. But injunctions should be interpreted and applied with an eye to the underlying equities, and not just to their text. See ECF 350 at 2. And Article III courts should avoid involvement in the important work of immigration tribunals unless doing so is strictly necessary. Given this backdrop, the Court did not simply rest on the plain language of the June 11 preliminary injunction. Rather, it sought factual evidence before landing on a final conclusion. See ECF 350 at 5-6 & 6 n.7. That evidence has now been submitted, and it includes uncontested evidence as to injuries to the Petitioner that flow from the June 20 finding as to Section 1227(a)(4)(C)(i). See Declaration of Mahmoud Khalil ¶¶ 4-9. That evidence does not serve as a basis for "expanding" the June 11 preliminary injunction. It simply helps to show why the equities favor applying the June 11 preliminary injunction as it was written. And doing that means that the June 20 decision must be vacated or amended. As to the immigration judge's non-consideration of a Section 1227(a)(1)(H) waiver, the

\*   \*   \*

IT IS on this 17th day of July, 2025, so **ORDERED**.

_____
Michael E. Farbiarz, U.S.D.J.

---

point is a bit different.  The uncontested factual evidence that has now been put before the Court makes clear that, but for the Secretary's determination, a waiver application on the LPR Charge would normally have been taken up and resolved --- and that if it was, that might well favor a person situated like the Petitioner.  That uncontested factual evidence does not serve as a basis for "expanding" the June 11 preliminary injunction.  Rather, it shows that the June 11 injunction, as it was written, compels consideration of the waiver possibility.  After all, given the facts here, there is no real-world difference between (a) seeking to remove the Petitioner on the LPR Charge, with the Secretary's determination operating as the impediment to a possible waiver of removal and (b) what the June 11 preliminary injunction explicitly forbids --- "seeking to remove the Petitioner from the United States based on the Secretary of State's determination."

10