**Nos. 25-2162 & 25-2357**

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE THIRD CIRCUIT

Mahmoud KHALIL,

*Petitioner-Appellee,*

Donald J. TRUMP, in his official capacity as President of the United States;
William P. JOYCE, in his official capacity as Acting Field Office Director of
New York, Immigration and Customs Enforcement; Yolanda PITTMAN, in
her official capacity as Warden of Elizabeth Contract Detention Facility;
Todd LYONS, in his official capacity as Acting Director of Immigration and
Customs Enforcement; Kristi NOEM, in her official capacity as Secretary of
the Department of Homeland Security; Marco RUBIO, in his official capacity
as Secretary of State; and Pamela BONDI, in her official capacity as Attorney
General of the Department of Justice,

*Respondents-Appellants.*

### OPPOSITION TO RESPONDENTS' EMERGENCY MOTION TO STAY
### THE DISTRICT COURT'S JULY 17, 2025 ORDER PENDING APPEAL

AMERICAN CIVIL LIBERTIES UNION OF
NEW JERSEY FOUNDATION
Jeanne LoCicero
Farrin R. Anello
Molly K.C. Linhorst
Liza Weisberg
570 Broad Street, 11th Floor
Newark, New Jersey 07102
Tel: (973) 854-1715

CENTER FOR CONSTITUTIONAL RIGHTS
Baher Azmy
Samah Sisay
Diala Shamas
666 Broadway, 7th Floor
New York, NY 10012
Tel: (212) 614-6464

NEW YORK CIVIL LIBERTIES UNION
FOUNDATION
Amy Belsher
Robert Hodgson
Veronica Salama
Molly Biklen
125 Broad Street, 19th Floor
New York, N.Y. 10004
Tel: (212) 607-3300

AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
Omar Jadwat
Noor Zafar
Sidra Mahfooz
Brian Hauss
Esha Bhandari
Vera Eidelman
Tyler Takemoto
Brett Max Kaufman
125 Broad Street, 18th Floor
New York, NY 10004
Tel: (212) 549-2500

CLEAR PROJECT
MAIN STREET LEGAL SERVICES, INC.
Ramzi Kassem
Naz Ahmad
Mudassar Hayat Toppa
Shezza Abboushi Dallal
CUNY School of Law
2 Court Square
Long Island City, NY 11101
Tel: (718) 340-4558

WASHINGTON SQUARE LEGAL SERVICES,
INC.
Alina Das
Kyle Barron
Immigrant Rights Clinic
245 Sullivan Street, 5th Floor
New York, New York 10012
Tel: (212) 998-6430

DRATEL & LEWIS
Amy E. Greer
29 Broadway, Suite 1412
New York, NY 10006
Tel: (212) 732-8805

VAN DER HOUT LLP
Marc Van Der Hout
Johnny Sinodis
Oona Cahill
360 Post St., Suite 800
San Francisco, CA 94108
Tel: (415) 981-3000

*Counsel for Petitioner-Appellee*

# TABLE OF CONTENTS

INTRODUCTION ......................................................................... 1

FACTUAL BACKGROUND & PROCEDURAL HISTORY .................................. 4

LEGAL STANDARD ....................................................................... 9

ARGUMENT ............................................................................. 10

   I.   Respondents are not likely to succeed on the merits ........................ 10

       A.    The district court properly exercised habeas jurisdiction in issuing and clarifying the preliminary injunction ..................... 10

       B.    The INA does not strip jurisdiction over Petitioner's claims ..... 13

   II.  Respondents cannot demonstrate irreparable harm, and the equities decisively favor Petitioner ................................... 20

   III. Alternatively, this Court should stay only the prospective portion of the district court's injunction ........................... 24

CONCLUSION ........................................................................... 25

## INTRODUCTION

Respondents-Appellants seek emergency relief for an emergency they manufactured through willful noncompliance with a district court injunction—and, on both the merits and the equities, their motion should be denied.

Almost seven weeks ago, on June 11, the district court preliminarily enjoined Respondents from "seeking to remove the Petitioner from the United States based on the Secretary of State's determination" that, given Petitioner's lawful past, current, or expected beliefs or speech, his presence or activities in the United States would compromise a compelling U.S. foreign policy interest. Add.1; *see* ECF 272 (Respondent Rubio's reliance on the "foreign policy ground" ("FPG") in 8 U.S.C. § 1227(a)(4)(C)—the "Rubio Determination"—was unconstitutionally vague); ECF 299 (granting preliminary injunction).[1] Rather than comply with or seek clarification of the June 11 order, Add.9, Respondents simply ignored it. Self-servingly taking the position that the injunction's prohibition against "seeking to remove" Petitioner based on the FPG only bars Petitioner's *actual removal* on that

---

[1] ECF numbers reference the district court docket, 25-cv-1963 (D.N.J.).

ground, Mot.14; ECF 332-2—even though his removal was already enjoined under the All Writs Act, ECF 81—they barreled ahead in Petitioner's immigration case in ways that the district court had already found would cause Petitioner irreparable harm. Add.6; ECF 355 at 2 n.1; ECF 299 at 4-12. Respondents' refusal to abide by the injunction's plain meaning forced *Petitioner* to ask the district court to clarify the injunction. Add.1-2; ECF 332. Now that the district court has done so, ECF 355, Respondents rush to this Court for stay relief the district court soundly denied.

"Emergency" aside, there is no basis for a stay.

First, on the merits, Respondents do not even take issue with the district court's conclusion that the Rubio Determination likely violates the Constitution. Instead, they make two weak jurisdictional arguments: first, that the district court's orders are far beyond the reach of a habeas court; and second, that the Immigration and Nationality Act ("INA") stripped the district court of jurisdiction over Petitioner's FPG claim. Mot.6-11. The district court correctly dismissed the first argument as both "surprising" and wrong, Add.3 n.1, as the Supreme Court has recently made clear, *see Trump v. J.G.G.*, 145 S. Ct. 1003, 1005 (2025) (collecting cases deeming broader equitable relief appropriate via habeas). And the court correctly dismissed the second

argument months ago, in an extensively reasoned 108-page opinion addressing the INA. ECF 214.

Second, Respondents fail to justify a stay on the equities. To begin, by seeking to stay a six-week-old order that they chose to ignore (and violate) in ways that necessitated remedial measures, Respondents come to this Court with unclean hands. Further, the district court has repeatedly found—upon factual submissions Respondents have consistently failed to contest—that permitting Respondents to proceed with their efforts to detain and remove Petitioner based on the Rubio Determination would effectuate serious and irreparable reputational, occupational, and speech-related harms. ECF 299 at 4-10. Against Petitioner's voluminous and undisputed factual record, Respondents "vaguely gesture at arguments they 'may' one day be barred from making," Add.6; that unspecified "inefficiencies" somehow add up to irreparable harm, Add.7; and that a single order affecting a single case irreparably harms the executive's ability to enforce a federal statute, Add.8. None of these comes close to carrying Respondents' burden, and "the balance of the equities and the public interest strongly favor[] the Petitioner." Add.9.

The Court should deny Respondents' motion for a stay. Alternatively, if the Court were inclined to grant any stay at all, it should stay only only the

prospective portion of the district court's injunction. *See* Part III.[2]

## FACTUAL BACKGROUND & PROCEDURAL HISTORY[3]

On March 8, out of the blue and without a warrant, plainclothed federal officers arrested Petitioner—a lawful permanent resident—inside the vestibule of his apartment building in Manhattan and, the next day, whisked him first to New Jersey and then on to a remote detention facility in Louisiana. ECF 236 ¶¶ 45-53, 56. At first, Respondents charged Petitioner as removable from the United States under the FPG, *id.* ¶¶ 82-83, which purports to authorize the Secretary of State to deem a noncitizen removable based on a determination that the noncitizen's lawful speech would "compromise a compelling foreign policy interest," 8 U.S.C. § 1227(a)(4)(C). Relying on that statute, Respondent Rubio determined that Petitioner's expressive activity in support of Palestinian rights—and only his expressive activity—rendered him both detainable and removable from the United States. ECF 236 ¶¶ 82-83.

---

[2] Petitioner has separately filed a motion to dismiss Respondents' appeal and respectfully requests that the Court decide that motion first. *See* Motion to Dismiss, No. 25-2357 (3d Cir. July 28, 2025), ECF 9.

[3] Additional details are set out in another filing in this case. *See* Br. in Opposition at 2-7, No. 25-2162 (3d Cir. July 9, 2025), ECF 23-1 ("Bail Stay Opp.").

Within hours of his arrest, Petitioner's lawyers filed a habeas petition on his behalf in the Southern District of New York seeking his release from detention. *Id.* ¶ 54.[4] A week later, Respondents levied a second immigration charge ("the LPR Charge") alleging misrepresentations on Petitioner's green card application. *Id.* ¶ 88.

On March 25, after transfer of the petition from the S.D.N.Y. to the District of New Jersey, Petitioner filed an amended motion for a preliminary injunction on First and Fifth Amendment grounds seeking Petitioner's release from detention on the basis of the Rubio Determination and an injunction against Respondents' reliance on the FPG against him. ECF 124. Over the next several months, the district court methodically determined, in lengthy opinions, that it has habeas and subject-matter jurisdiction. ECF 153 (habeas jurisdiction); ECF 214 (subject-matter jurisdiction notwithstanding jurisdiction-stripping provisions of the Immigration and Nationality Act ("INA")).

And on June 11, the court issued a preliminary injunction prohibiting Respondents "from seeking to remove the Petitioner from the United States

---

[4] Petitioner later filed several amended habeas petitions, with the operative one found at ECF 236.

based on the [Rubio Determination]" and from detaining him on that basis. ECF 299 at 12-13. On the merits, the court concluded that Respondents' use of the FPG against Petitioner was likely unconstitutionally vague. ECF 272. And on the equities, the court concluded on a voluminous and largely undisputed factual record that, if Respondents were permitted to rely on the Rubio Determination in removal proceedings, Petitioner would suffer reputational, occupational, and speech-related irreparable harms. ECF 299 at 4-10. On June 20, Respondents filed a notice of appeal but did not seek to stay the preliminary injunction. ECF 318.

What happened next is why the parties are now before this Court in this posture. On June 12, Petitioner asked Respondents to inform the immigration judge ("IJ") that they were no longer relying on the FPG, pursuant to the district court order, ECF 301 at 5, and made his own filing with the IJ, *see* ECF 341-1 at 5. Respondents ignored Petitioner's request, and on June 20, the IJ issued a written order of Petitioner's removal and refused to consider bond or a removability waiver, all on the basis of the enjoined FPG.  ECF 355 at 2 & n.1. That action, which Petitioner understood to plainly violate the June 11 injunction by continuing to seek his removal based on the enjoined Rubio Determination, compelled Petitioner to seek clarification over the injunction

from the district court. ECF 332. In particular, Petitioner was concerned that the IJ's order would require him to file an appeal with the Board of Immigration Appeals ("BIA") that would divest the IJ of jurisdiction over Petitioner's case and make further efforts to compel Respondents' compliance more difficult. *See id.* at 1 n.1.

After briefing, on July 17, the district court clarified the requirements of its injunction. First, it explained that the IJ's June 20 decision "was directly inconsistent with the" injunction. ECF 355 at 2. And second, it "f[ound] as a factual matter that the Respondents' efforts to remove the Petitioner from the United States on the LPR [C]harge 'meaningfully rely on the [Rubio Determination].'" *Id.* at 5 (quoting ECF 350 at 2).[5]

Based on those conclusions, further clarified that, in keeping with its June 11 preliminary injunction, Respondents must "promptly cause the [IJ] to take all appropriate steps on July 18 that would be required to ensure that she would not be divested of her jurisdiction over [Petitioner's immigration case]." *Id.* at 9; *see id.* (leaving "appropriate steps" to Respondents'

---

[5] Notably, the court explained that another element of the IJ's action— regarding Petitioner's asylum application—was "not at odds with the . . . June 11 preliminary injunction" because the IJ's asylum decision was based on reasons unrelated to the Determination. ECF 355 at 4.

discretion). *Id.* Additionally, because it "f[ound] as a factual matter" that the Rubio Determination "is the likely reason that" Petitioner's waiver request "has not been ruled on," it clarified that Respondents must "cause the [IJ] to consider" and "determine" whether Petitioner is entitled to an evidentiary hearing as to his request for a waiver of the LPR Charge and whether he is entitled to a waiver. *Id.* at 5, 8.

On July 18, in partial compliance with the district court's order, the IJ reopened Petitioner's immigration case, ensuring she did not lose jurisdiction. ECF 360-1 at 1 n.1. Later that day, Respondents filed a motion to stay the court's July 17 order, ECF 360-1, and on July 25, the court denied the motion. Add.1-9. In so doing, the court concluded that Respondents were not likely to succeed on the merits—first explaining that Respondents' arguments based on INA jurisdiction-stripping provisions "run[] aground on the plain text of the statute" and are "at odds with a Third Circuit decision," *id.* at 3 (rejecting argument based on 8 U.S.C. § 1252(b)(9) (citing ECF 214 at 6-29 and *E.O.H.C. v. DHS*, 950 F.3d 177 (3d Cir. 2020)); *see id.* at 6 (rejecting argument based on 8 U.S.C. § 1252(g)), and further explaining that "there can be no meaningful suggestion that the June 11 preliminary injunction (as clarified on July 17) pushed beyond th[e] Court's core habeas jurisdiction," *id.* at 5-6.

The court also rejected Respondents' unpersuasive "grab bag" of arguments about irreparable harm, concluding that they are "exaggerated" and "not remotely strong enough to carry their burden." *Id.* at 6-7. And the court concluded that "the balance of the equities and the public interest strongly favors the Petitioner," emphasizing that "the critical fact[] here" is that the IJ's June 20 action violated the district court's June 11 injunction. *Id.* at 9. Finally, the court gave Respondents until August 1 at 10:00 a.m. to comply with its June 11 injunction as clarified by its July 17 order. *Id.*

## LEGAL STANDARD

Because a stay pending appeal is an "intrusion into the ordinary processes of . . . judicial review," the party seeking a stay bears a heavy burden, and a court must consider (1) whether the applicant makes "a strong showing" of likelihood of success on the merits; (2) whether the applicant will suffer irreparable injury "absent a stay"; (3) whether a stay would "substantially injure the other part[y]"; and (4) "where the public interest lies." *Nken v. Holder*, 556 U.S. 418, 425-27 (2009) (cleaned up).

The Court reviews a district court's denial of a stay pending appeal "for abuse of discretion, giving proper regard to the district court's feel of the case," *S.S. Body Armor I., Inc. v. Carter Ledyard & Milburn LLP*, 927 F.3d 763,

772 (3d Cir. 2019), and the district court's factual findings must be accepted

unless "clearly erroneous," Fed. R. Civ. P. 52(a)(6).

**ARGUMENT**

**I.    Respondents are not likely to succeed on the merits.**

   **A.    The district court properly exercised habeas jurisdiction in issuing and clarifying the preliminary injunction.**

First, Petitioner has already addressed Respondents' argument that the

district court lacks habeas jurisdiction. *See* Bail Stay Opp. at 8-12.

Second, the district court's order does not "far exceed[] the relief that

may be awarded by a federal court sitting in habeas." Mot.6. The purpose of

habeas is to remedy unlawful restraints on liberty, including but *not limited*

*to* unlawful physical confinement. The Supreme Court very recently

reaffirmed that "immediate physical release is not the only remedy under the

federal writ of habeas corpus," *J.G.G.*, 145 S. Ct. at 1005 (cleaned up)

(quoting *Peyton v. Rowe*, 391 U.S. 54, 67 (1968)). The Court further explained

that "[r]egardless of whether the detainees formally request release from

confinement, [if] their claims for relief 'necessarily imply the invalidity' of

their confinement and removal" then "their claims fall within the 'core' of the

writ of habeas corpus." *Id.* (quoting *Nance v. Ward*, 597 U.S. 159, 167 (2022)).[6]

Here, Petitioner's claim against Respondents' use of the FPG indisputably "implies the invalidity" of his detention on that ground. *Contra* Mot.7-8. Indeed, the preliminary injunction not only prevented Respondents from removing Petitioner on the basis of the FPG but also explicitly barred them "from *detaining*" him on that ground. ECF 299 at 13 (emphasis added); *see id.* at 10 (finding that "Petitioner's detention almost surely flows from" the Rubio Determination).[7]

---

[6] Even after release, a habeas court can adjudicate unlawful government actions to the extent a released petitioner is suffering "collateral consequences" from detention. *See Evitts v. Lucey*, 469 U.S. 387, 391 n.4 (1985); *Sibron v. New York*, 392 U.S. 40, 55 (1968); *Carafas v. LaVallee*, 391 U.S. 234, 237 (1968); *see also* 28 U.S.C. § 2243 (habeas court "shall . . . dispose of the matter as law and justice require").

[7] The cases Respondents rely on for the anodyne proposition that the function of habeas is to secure release do not limit the Court's actions here, as the relief sought in those cases was categorically unrelated to protecting any interest in release. *See DHS v. Thuraissigiam*, 591 U.S. 103, 118 (2020) (addressing historical common-law understandings of habeas, and holding Suspension Clause does not authorize district court to require renewed "credible fear" proceedings beyond what Congress has specifically prescribed for individual seeking entry to United States); *Munaf v. Geren*, 553 U.S. 674, 693-94 (2008) (district court not authorized to enjoin transfer of petitioner following release from U.S. to Iraqi custody or to proscribe application of Iraqi criminal process in light of Iraqi sovereign prerogatives); *Preiser v. Rodriguez*, 411 U.S. 475,

11

Respondents' attempts to cast the injunction as an "exercise[ of] direct appellate review of the IJ's interlocutory proceedings," Mot.7, fail. The June 11 injunction did not require the IJ to take any affirmative action *at all*—it simply *prohibited* Respondents from detaining or "seeking to remove" Petitioner based on the FPG. ECF 299 at 12. It was only after the IJ—who, as an executive branch official, answers to Respondents, *see* ECF 347 at 2—acted in violation of the injunction that the district court "need[ed] to take a backward-looking action," ECF 355 at 2 n.1, which is consistent with a federal court's core equitable "power to ensure that its injunctive decrees are effective as a practical matter." *Id.* at 8 (citing, *inter alia, Nken*, 556 U.S. at 428).

Finally, Respondents argue that "Petitioner has already secured all the relief that habeas corpus can offer" for two reasons: "he is not in detention," and he "cannot be removed based on the foreign-policy ground." Mot.8. Both are misleading. Petitioner is not currently detained because he secured *bail*, which is *conditional* relief pending the final adjudication of his habeas petition, ECF 316—meaning his ultimate freedom is still on the line. And Respondents' apparent concession that they are not seeking to stay the

---

484 (1973) (only habeas, subject to exhaustion requirements, and not 42 U.S.C. § 1983 actions, can effectuate release from custody).

preliminary injunction insofar as it prevents Petitioner's ultimate removal based on the Rubio Determination is irrelevant, as the remainder of the injunction prevents Petitioner's detention, as well as irreparable harms flowing from Respondents' continued pursuit of his removal, on that same ground.[8]

### B.    The INA does not strip jurisdiction over Petitioner's claims.

The INA did not deprive the district court of jurisdiction to consider Petitioner's claims and order appropriate relief. *See* Mot.8 (citing 8 U.S.C. §§ 1252(b)(9), (g)). The Supreme Court has "consistently applied" the "well-settled" and strong presumption favoring judicial review of administrative action to immigration statutes. *Guerrero-Lasprilla v. Barr*, 589 U.S. 221, 229 (2020) (cleaned up) (collecting cases). That presumption, which can only be overcome by "clear and convincing evidence of congressional intent to preclude judicial review," applies here. *Id*. (cleaned up); *see also E.O.H.C.*, 950 F.3d at 184 ("the narrower construction of a jurisdiction-stripping provision is favored" (cleaned up)).

---

[8] In any event, Petitioner brought this case as both a habeas corpus petition *and* a complaint under 28 U.S.C. § 1331. ECF 236. Hybrid pleadings like Petitioner's are routinely filed in this Circuit seeking various forms of relief. *See, e.g.*, *Alli v. Decker*, 650 F.3d 1007, 1009-10, 1016 (3d Cir. 2011).

**8 U.S.C. § 1252(g).** Respondents argue that the July 17 Order prohibiting the IJ from relying on the Rubio Determination "runs headlong" into 1252(g). Mot.9. But it is Respondents who disregard the statute's plain text.

First, section 1252(g) "does not sweep broadly," *Tazu v. Att'y Gen.*, 975 F.3d 292, 296 (3d Cir. 2020); ECF 214 at 101 (collecting cases), and applies "only to three discrete actions" taken at the discretion of the *Attorney General* to commence proceedings, adjudicate cases, or execute removal orders, *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999) ("*AADC*"). Here, Petitioner challenges the constitutionality of the *Secretary of State's* FPG determination, and the preliminary inunction bars Respondents only from "seeking to remove the Petitioner" on that basis. ECF 355 at 2. The Rubio Determination is not one of the "three specific actions" of the Attorney General, and therefore not one of the exercises of "prosecutorial discretion" that section 1252(g) was designed to protect. *Tazu*, 975 F.3d at 297. Indeed, *AADC* itself contemplated that many "decisions or actions that may be part of the deportation process" would not fall within the "narrow" ambit of section 1252(g). 525 U.S. at 482, 483, 487; *see Tazu*, 975 F.3d at 298 (section

1252(g) does not reach claims "challen[ging] Government actions taken *before* the Attorney General tried to execute [any] order" (emphasis added)).

Second, section 1252(g) is "not implicated" where, as here, Petitioner challenges the "very authority" to seek removal on an unlawful basis. *Garcia v. Att'y Gen.*, 553 F.3d 724, 729 (3d Cir. 2009). "[U]nless the Attorney General first has authority under the [INA] to remove an alien, § 1252(g) cannot shield the Attorney General's discretionary use of that authority." *Tazu*, 975 F.3d at 297; *see United States v. Hovsepian*, 359 F.3d 1144, 1155 (9th Cir. 2004) (en banc) ("The district court may consider a purely legal question" that "forms the backdrop against which the Attorney General later will exercise discretionary authority . . ."); *Madu v. Att'y Gen.*, 470 F.3d 1362, 1368 (11th Cir. 2006) (section 1252(g) "does not proscribe substantive review of the underlying legal bases for those discretionary decisions and actions"). Here, the district court's order finding that the Rubio Determination was likely unconstitutional "took away the Attorney General's authority" to take actions to remove Petitioner on this basis. *Tazu*, 975 F.3d at 298; *cf. id.* (1252(g) barred petitioner's claim where he identified "no flaw" in Attorney General's "authority to remove him").

Finally, section 1252(g) bars review only of a "cause or claim" arising from the Attorney General's decisions or actions to undertake the three specified acts. Thus, even though the district court's *remedy* (to correct Respondents' violation of the injunction) implicates actions by the IJ, 1252(g) does not strip jurisdiction to review Petitioner's underlying *claim* where, as explained above, that claim does not challenge a covered action. Had Congress wished to prohibit such remedies in section 1252(g), it would have done so explicitly, as it did in other provisions of section 1252 that deal expressly with limitations on relief. *See, e.g.*, 8 U.S.C. §§ 1252(e)(1), (f). "Where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion," *Kucana v. Holder*, 558 U.S. 233, 249 (2010) (cleaned up)— especially where, as here, the provisions referenced "were enacted as part of a unified overhaul of judicial review procedures," *Nken*, 556 U.S. at 430-431; *see* REAL ID Act, Pub. L. No. 109-13, 119 Stat. 312 (May 11, 2005) (amending INA's judicial review provisions to curtail habeas review of final removal orders).

16

Even if 1252(g) applied to remedies, consistent with its "narrow" reach, this Court has held that its prohibition on review of the Attorney General's discretion to "adjudicate cases" encompasses only "prosecutorial" actions—such as the decision "to indict a criminal and bring him to trial"—but does not encompass "quasi-judicial decisions" by the immigration courts. *Chehazeh v. Att'y Gen.*, 666 F.3d 118, 135 (3d Cir. 2012); *see Barahona-Gomez v. Reno*, 236 F.3d 1115, 1121 (9th Cir. 2001) (collecting cases). The district court's injunction prohibiting the IJ from relying on the Rubio Determination bars a quasi-judicial action, and not a prosecutorial one.

**8 U.S.C. § 1252(b)(9).** Section 1252(b)(9) does not bar review for two reasons.

First, *contra* Mot.11 n.3, section 1252(b)(9) only applies to final removal orders,[9] and Petitioner has not been issued one. *Chehazeh*, 666 F.3d at 131-33; *see* 8 U.S.C. § 1101(a)(47)(B); *Yusupov v. Att'y Gen.*, 518 F.3d 185, 195 (3d Cir. 2008).

Second, even if section 1252(b)(9) applied to pre-final-order cases, judicial review must provide "meaningful" relief. *Jennings v. Rodriguez*, 583

---

[9] The same is true of 8 U.S.C. § 1252(a)(5). *See, e.g.*, *INS v. St. Cyr*, 533 U.S. 289, 311, 313 (2001).

U.S. 281, 293 (2018) (plurality opinion); *see also* ECF 214 at 54-101. From *Jennings*, this Court distilled a simple "now-or-never" principle: section 1252(b)(9) "poses no jurisdictional bar . . . when [noncitizens] seek relief that courts cannot meaningfully provide alongside review of a final order of removal." *E.O.H.C.*, 950 F.3d at 186.

Petitioner's "core argument" is that his free speech rights "are being violated, *now*." *Mahdawi v. Trump*, 136 F.4th 443, 452 (2d Cir. 2025). Every day that Respondents seek to remove him based on the FPG, they are chilling Petitioner's speech and that of others who seek to speak out in support of Palestinian rights, thereby effectively accomplishing the unconstitutional objective of censoring "timel[y]" political speech when it could still influence public debate. *Elrod v. Burns*, 427 U.S. 347, 374 n.29 (1976); *see* ECF 352-2 ¶¶ 4-6 (describing chill of Petitioner's speech). Waiting until the end of a lengthy petition for review ("PFR") process to consider these claims would render them "effectively unreviewable," *Jennings*, 583 U.S. at 293, because "relief [would] come too late to redress" those First Amendment injuries, *E.O.H.C.*, 950 F.3d at 186.[10] The "here-and-now impact" of Petitioner's case

---

[10] To the extent the Court finds section 1252(b)(9) ambiguous as to its scope, *see E.O.H.C.*, 950 F.3d at 185, the canon of constitutional avoidance favors reading the statute not to apply to Petitioner's claims, as doing so would raise

"on political speech," ECF 214 at 83, coupled with the fact that the IJ and BIA do not have authority to grant Petitioner the relief he seeks or adequately develop the record for expeditious review by the court of appeals, establish that "meaningful review" cannot be provided through a PFR. *Id*. at 54-101.

Finally, even if section 1252(b)(9) applies, the First Amendment would still require immediate review. *See* ECF 214 at 84-90. As Justice Ginsburg's *AADC* concurrence explained, cases addressing federal injunctions that stop state or administrative proceedings provide a "helpful framework." 525 U.S. at 492-93 (Ginsburg, J., concurring) (discussing, *inter alia*, *Dombrowski v. Pfister*, 380 U.S. 479 (1965)). Applied here, those cases "suggest[] that interlocutory intervention in [immigration] proceedings would be in order, notwithstanding a statutory bar, if the [agency] acts in bad faith, lawlessly, or in patent violation of constitutional rights." *Id.* at 494. Petitioner has readily made that showing here, as the factual record is replete with unrebutted evidence that Petitioner was targeted for his speech and to silence public debate expressing similar viewpoints. *See, e.g.,* ECF 236 ¶¶ 30-33, 73-84; ECF 352-2 ¶¶ 4-6; ECF 175-2. And the district court found that the Rubio

---

serious First Amendment concerns, *see Clark v. Martinez*, 543 U.S. 371, 381 (2005).

Determination is likely unconstitutional in reliance on First Amendment harms. *See* ECF 272 at 73 n.60. Thus, even assuming 1252(b)(9) applies to some of Petitioner's claims, the First Amendment requires immediate review.[11]

## II. Respondents cannot demonstrate irreparable harm, and the equities decisively favor Petitioner.

First, Respondents ask this Court to exercise its equitable power to issue a stay, but they have unclean hands. "It is an ancient and established maxim" that "[i]f a party seeks relief in equity, he must be able to show that on his part there has been honesty and fair dealing." *Bishop v. Bishop*, 257 F.2d 495, 500 (3d Cir. 1958). Respondents fail this test. Indeed, the specific measures Respondents seek to stay were required only because they self-servingly interpreted, failed to seek clarification of, and violated the clear terms of the original injunction. ECF 355 at 2 n.1. That is precisely the kind of behavior, "tainted with inequitableness or bad faith relative to the matter in which [a party] seeks relief," to which the unclean-hands doctrine—"rooted" as it is "in the historical concept of court of equity as a vehicle for affirmatively enforcing

---

[11] Any PFR would be reviewed by the Fifth Circuit, 8 U.S.C. § 1252(b)(2), not "*this Court*," Mot.11.

the requirements of conscience and good faith"—"closes the doors of a court of equity." *Bishop*, 257 F.2d at 500.

Second, Respondents have no claim to the kind of non-"speculative," "presently existing actual threat" that constitutes irreparable harm. *Adams v. Freedom Forge Corp.*, 204 F.3d 475, 487-88 (3d Cir. 2000) (cleaned up).

Respondents claim the injunction puts the government "at risk of forfeiting reliance on" the FPG to remove Petitioner in the future, or subject it to "complicated issues of collateral estoppel and res judicata." Mot.12. Incredibly, to meet *their own burden* to show irreparable harm, Respondents argue that it is *Petitioner* who must resolve these nebulous concerns. *Id.* Regardless, Respondents' fears are unfounded. They can add or substitute immigration charges any time proceedings remain open. 8 C.F.R. § 1003.30. And collateral estoppel—which is "flexible" when it comes to immigration proceedings, *Duvall v. Att'y Gen.*, 436 F.3d 382, 390 (3d Cir. 2006)—would not even arguably apply because there would be no IJ decision addressing the FPG (as the IJ has already vacated her June 20 decision), *see, e.g., id.* at 392; *Ndungu v. Att'y Gen.*, 126 F.4th 150, 166 (3d Cir. 2025) (same, because there was no previous "final judgment on the merits").

Respondents also gesture to administrative inconvenience, Mot.6-7, but

this argument is "exaggerated"; the IJ's June 20 decision remains "on the shelf," and should this Court ultimately reverse the June 11 injunction on appeal, "reinstatement" of the IJ decision would be "simple," Add.7. Besides, immigration courts contend with the impact of collateral proceedings all the time. ECF 362 at 10–12. And while Respondents invoke "additional strain . . . on an already overburden[ed immigration] system," Mot.13, they make "no real factual or legal effort to show that the costs of litigating on two tracks in this case . . . adds up to irreparable injury." Add.7.

Respondents also claim irreparable harm based on the injunction's effect on "the Executive's interests in enforcing and applying federal law," Mot.14, but to get there, they distort an in-chambers opinion of Chief Justice Roberts, ignoring that the injunction "does not disable the Respondents more generally," but only "for now, in this case," Add.8. Were Respondents' claim of irreparable harm on that basis legitimate, "the government will be able to show irreparable injury virtually every time it loses in a lower court"—but "[t]hat is not the law." *Id.*

Third, as the district court found in granting the injunction and in issuing its clarification order, the harms to Petitioner from a stay would be significant. ECF 299 at 4-11. Respondents' unconstitutional use of the FPG

against him has "cost him a job" and "damaged his career prospects." *Id.* at 5. It has harmed his reputation. *Id.* And it has "deter[red] him from engaging in speech-related activities." *Id.* at 6.[12] These well-documented harms remain uncontested.

And fourth, a stay is not in the public interest. Respondents do not even contend here that the district court's legal conclusion that their use of the FPG is likely unconstitutional is wrong on the merits, and there is no public interest in the unconstitutional enforcement of any law. ECF 299 at 12 (citing cases); *see Council of Alt. Political Parties v. Hooks*, 121 F.3d 876, 884 (3d Cir. 1997). This is particularly true where the unconstitutional enforcement of a law would censor a political debate on matters of public importance. *See Amalgamated Transit Union Loc. 85 v. Port Auth. of Allegheny Cnty.*, 39 F.4th 95, 109 (3d Cir. 2022); *Sindicato Puertorriqueño de Trabajadores v. Fortuño*, 699 F.3d 1, 15 (1st Cir. 2012) (citing *Citizens United v. FEC*, 558 U.S. 310, 339 (2010)). Similarly, there is a strong public interest in ensuring that the executive branch acts lawfully, *Texas v. United States*, 809 F.3d 134, 187 (5th

---

[12] That Petitioner has engaged in post-release advocacy, Mot.15, does not vitiate the chill caused by the Rubio Determination, ECF 352-2 ¶¶ 4-6—and that speech directl flows from the preliminary injunction barring his detention or removal on FPG grounds.

Cir. 2015), particularly with respect to the rights protected by the Great Writ,

"itself an indispensable mechanism for monitoring the separation of powers,"

*Boumediene v. Bush*, 553 U.S. 723, 765 (2008).

### III. Alternatively, this Court should stay only the prospective portion of the district court's injunction.

If the Court were nonetheless inclined to grant a stay pending appeal,

it should, in the alternative, stay pending appeal only the portion of the

district court's preliminary injunction requiring Respondents to move forward

with the process of considering Petitioner's waiver request. While Petitioner

disputes Respondents' claimed harms from complying with that part of the

court's order, any such harm would be eliminated or at least substantially

mitigated through a limited stay of Respondents' prospective obligations. *See,*

*e.g.*, *Trump v. Int'l Refugee Assistance Project*, 582 U.S. 571, 580 (2017) (a

court may, "in its discretion, tailor a stay so that it operates with respect to

only some portion of the proceeding" (cleaned up)).

Were the Court to grant such a limited stay, it should make clear that

the preliminary injunction remains in effect with respect to the actions

Respondents have already taken—namely, the reopening of Petitioner's

immigration proceedings—and still precludes, pending appeal, Respondents

from moving forward in those proceedings in any way based on the Rubio Determination. Such a limited stay would protect Petitioner from the obvious harms flowing from a broader stay while this Court adjudicates the underlying merits of the district court's preliminary injunction on appeal.

## CONCLUSION

The Court should deny Respondents' motion. In the alternative, the Court should grant a limited stay as set forth above.

Dated: July 28, 2025

AMERICAN CIVIL LIBERTIES UNION OF
NEW JERSEY FOUNDATION
Jeanne LoCicero
Farrin R. Anello
Molly K.C. Linhorst
Liza Weisberg
570 Broad Street, 11th Floor
Newark, New Jersey 07102
Tel: (973) 854-1715

NEW YORK CIVIL LIBERTIES UNION
FOUNDATION
Amy Belsher
Robert Hodgson
Veronica Salama
Molly Biklen
125 Broad Street, 19th Floor
New York, N.Y. 10004
Tel: (212) 607-3300

*/s/ Brett Max Kaufman*

CENTER FOR CONSTITUTIONAL RIGHTS
Baher Azmy
Samah Sisay
Diala Shamas
666 Broadway, 7th Floor
New York, NY 10012
Tel: (212) 614-6464

CLEAR PROJECT
MAIN STREET LEGAL SERVICES, INC.
Ramzi Kassem
Naz Ahmad
Mudassar Hayat Toppa
Shezza Abboushi Dallal
CUNY School of Law
2 Court Square
Long Island City, NY 11101
Tel: (718) 340-4558

AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
Omar Jadwat
Noor Zafar
Sidra Mahfooz
Brian Hauss
Esha Bhandari
Vera Eidelman
Tyler Takemoto
Brett Max Kaufman
125 Broad Street, 18th Floor
New York, NY 10004
Tel: (212) 549-2500

WASHINGTON SQUARE LEGAL SERVICES,
INC.
Alina Das
Kyle Barron
Immigrant Rights Clinic
245 Sullivan Street, 5th Floor
New York, New York 10012
Tel: (212) 998-6430

DRATEL & LEWIS
Amy E. Greer
29 Broadway, Suite 1412
New York, NY 10006
Tel: (212) 732-8805

VAN DER HOUT LLP
Marc Van Der Hout
Johnny Sinodis
Oona Cahill
360 Post St., Suite 800
San Francisco, CA 94108
Tel: (415) 981-3000

*Counsel for Petitioner-Appellee*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 28, 2025, I electronically filed the foregoing document with the Clerk of the United States Court of Appeals for the Third Circuit by using the CM/ECF system. Counsel in this case are registered CM/ECF users and service will be accomplished by the CM/ECF system.

*/s/ Brett Max Kaufman*
Brett Max Kaufman
*Counsel for Petitioner-Appellee*

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 27(d)(2)(A) because it contains 5,198 words and complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a) because it has been prepared in a proportionally spaced typeface using Microsoft Word 14-point Charter typeface.

*/s/ Brett Max Kaufman*
Brett Max Kaufman
*Counsel for Petitioner-Appellee*