# Nos. 25-2162 & 25-2357

**IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT**

Mahmoud KHALIL,
*Petitioner-Appellee*
v.
Donald J. Trump, et al.
*Respondents-Appellants*

**ON APPEAL FROM THE U.S. DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY, NO. 25-1963 (MEF) (MAH)**

**BRIEF OF IMMIGRATION LAWYERS, LAW PROFESSORS, AND
SCHOLARS AS AMICI CURIAE IN SUPPORT OF PETITIONER-
APPELLEE**

Fatma Marouf
Professor of Law
Texas A&M School of Law
1515 Commerce St.
Fort Worth, TX 76102
Tel: (817) 212-4123
fatma.marouf@law.tamu.edu
(in her individual capacity)

Elora Mukherjee
Jerome L. Greene Clinical Professor
of Law, Columbia Law School
Morningside Heights Legal Services
435 W. 116th Street, Room 831
New York, NY 10027
Tel: (212) 854-4291
emukherjee@law.columbia.edu
(in her individual capacity)

Ahilan Arulanantham
Professor from Practice
UCLA School of Law
385 Charles E. Young Dr. East
Los Angeles, CA 90095
Tel: (310) 825-1029
arulanantham@law.ucla.edu
(in his individual capacity)

Amber Qureshi
Law Office of Amber Qureshi, LLC
6925 Oakland Mills Rd, PMB #207
Columbia, MD 21045
Tel: (443) 583-4353
amber@qureshilegal.com
(in her individual capacity)

*Counsel for Amici Curiae*

# TABLE OF CONTENTS

INTRODUCTION AND STATEMENT OF AMICI ................................................1

ARGUMENT ...............................................................................................2

I.     8 U.S.C. § 1252(g) DOES NOT BAR JUDICIAL REVIEW........................3

II.    8 U.S.C. § 1252(b)(9) DOES NOT BAR JUDICIAL REVIEW ..................6

     A.  The Plain Language of 1252(b) is Limited to Claims Arising from Review of Removal Orders. ......................................................6

     B.  Detention Does Not "Arise From" An Action or Proceeding to Remove a Noncitizen from the United States.........................................15

     C.  The Government's Interpretation Requiring Khalil to Bring His Claims in a Petition for Review Would Render Them Effectively Unreviewable, Raising Serious Constitutional Problems. ......................17

     D. Article III Courts Routinely Exercise Jurisdiction Over Agency Actions Where Plaintiffs Allege Constitutional Violations and Their Claims Would Be Lost if III Review Were Deferred Until After the Administrative Process. ...................................................................20

III.   *AMICI* ARE UNAWARE OF THE GOVERNMENT HAVING EVER RELIED ON 8 U.S.C. § 1227(a)(4)(C) TO DEPORT A PERMANENT RESIDENT FOR POLITICAL SPEECH. ....................................................23

CONCLUSION ..........................................................................................29

APPENDIX I      LIST OF AMICI CURIAE

APPENDIX II    DECLARATION OF GRAEME BLAIR, PH.D., AND DAVID HAUSMAN, J.D., PH.D.

## TABLE OF AUTHORITIES

**Federal Cases**

Aguilar v. ICE, 510 F.3d 1 (1st Cir. 2007)............................................17, 18, 19, 20

Ajlani v. Chertoff, 545 F.3d 229, 235 (2d Cir. 2008) ...............................................11

Ali v. Mukasey, 524 F.3d 145 (2d Cir. 2008) ...........................................................5

Arce v. United States, 899 F.3d 796 (9th Cir. 2018)..................................................5

Axon Enter., Inc. v. Fed. Trade Comm'n, 598 U.S. 175 (2023).............................20

Black v. Decker, 103 F.4th 133 (2d Cir. 2024).........................................................4

Carr v. Saul, 593 U.S. 83 (2021)..............................................................................21

Chehazeh v. Att'y Gen. of United States, 666 F.3d 118 (3d Cir. 2012) ...........10, 19

Crowell v. Benson, 285 U.S. 22 (1932) ...................................................................19

Delgado v. Quarantillo, 643 F.3d 52 (2d Cir. 2011) ...............................................16

DHS v. Regents of the Univ. of California, 591 U.S. 1 (2020) ..........................5, 15

E.O.H.C. v. Secretary of DHS, 950 F.3d 177 (3d Cir. 2020)............................10, 17

Free Enter. Fund v. Pub. Co. Acct. Oversight Bd., 561 U.S. 477 (2010) ...............21

Garcia v. Att'y Gen., 553 F.3d 724 (3d Cir. 2009) ...................................................4

Gonzalez-Alarcon v. Macias, 884 F.3d 1266 (10th Cir. 2018)...............................11

Gonzalez v. ICE, 975 F.3d 788 (9th Cir. 2020) .......................................................16

Hamdi ex rel. Hamdi v. Napolitano, 620 F.3d 615 (6th Cir. 2010) .......................17

Hernández v. Gonzales, 424 F.3d 42 (1st Cir. 2005)...............................................16

ii

I.N.S. v. St. Cyr, 533 U.S. 289 (2001) ...............................................................passim

Jennings v. Rodriguez, 583 U.S. 281 (2018) ...................................................passim

Johnson v. Robinson, 415 U.S. 361 (1974)...............................................................22

Khalil v. Trump, No. 25-cv-1963 (MEF) (D.N.J.)....................................................25

Kong v. United States, 62 F.4th 608 (1st Cir. 2023)...................................................5

Kreschollek v. S. Stevedoring Co., 78 F.3d 868 (3d Cir. 1996) ............................22

Loper Bright Enter. v. Raimondo, 603 U.S. 369 (2024) .........................................20

Madu v. Att'y Gen., 470 F.3d 1362 (11th Cir. 2006) ................................................5

Mapp v. Reno, 241 F.3d 221 (2d Cir. 2001). ..........................................................28

Massieu v. Reno, 915 F. Supp. 681 (D.N.J.), *rev'd on other grounds*,

   91 F.3d 416 (3d Cir. 1996). ...................................................................................24

Massieu v. Reno, 91 F.3d 416 (3d Cir. 1996). ...................................................24, 25

McNary v. Haitian Refugee Ctr, Inc., 498 U.S. 479 (1991)...................................10

Meza v. Renaud, 9 F.4th 930 (D.C. Cir. 2021) .......................................................11

Michalski v. Decker, 279 F. Supp. 3d 487 (S.D.N.Y. 2018) ..................................16

Monsalvo Velasquez v. Bondi, 145 S. Ct. 1232 (2024)..........................................12

Nadarajah v. Gonzales, 443 F.3d 1068 (9th Cir. 2006).........................................7, 8

Nielsen v. Preap, 586 U.S. 392 (2019)....................................................................15

Oestereich v. Selective Serv. Sys. Loc. Bd. No. 11, 393 U.S. 233 (1968)..............22

Parra v. Perryman, 172 F.3d 954 (7th Cir. 1999).....................................................5

Ragbir v. Homan, 923 F.3d 53 (2d Cir. 2019) ..........................................6

Reno v. Am.-Arab Anti-Discrimination Comm., 525 U.S. 471 (1999)..........passim

Singh v. Gonzalez, 499 F.3d 969 (9th Cir. 2007) ....................................8

Webster v. Doe, 486 U.S. 592 (1988) ..................................................22

Zadvydas v. Davis, 533 U.S. 678 (2001) .......................................3, 4, 19

## Administrative Decisions

Matter of Khalifah, 21 I&N Dec. 107 (BIA 1995)....................................28

Matter of Ruiz-Massieu, 22 I&N Dec. 833 (BIA 1999) ....................................2812

## Title 8 of the U.S. Code

8 U.S.C. § 1227(a)(4)(C), INA § 237(a)(4)(C) ..................................passim

8 U.S.C. § 1227(a)(4)(C)(i), INA § 237(a)(4)(C)(i)........................................passim

8 U.S.C. § 1227(a)(4)(D) ..................................................................23

8 U.S.C. § 1252(a)(1) ................................................................. 6-7

8 U.S.C. § 1252(a)(5) ..............................................................passim

8 U.S.C. § 1252(b)..................................................................passim

8 U.S.C. § 1252(b)(9)..............................................................passim

8 U.S.C. § 1252(g)..................................................................passim

## Other Statutes

REAL ID Act of 2005, Pub. L. No. 109–13, 119 Stat. 302 ....................................18

Illegal Immigration Reform and Immigrant Responsibility Act, Pub. L. No.

104–208 ................................................................................25

**Federal Regulations**

8 C.F.R. § 1003.19(d).........................................................12

8 C.F.R. § 1239.1 ..................................................................4

**Federal Rules**

Fed. R. App. P. 29(a)(4)(E) ...............................................1

**Legislative History**

H.R. Rep. 109-72 (2005) (Conf. Rep) ..............................18

**Miscellaneous**

Black's Law Dictionary (7th ed. 1999) ............................11

Jonah E. Bromwich and Hamed Aleaziz, *Columbia Student Hunted by ICE Sues to Prevent Deportation*, N.Y. Times, Mar. 4, 2025. ......................................26

Charlie Savage, *Congress Wrote a Deportation Law to be Used 'Sparingly.' Trump Has Other Ideas*, N.Y. Times, Apr. 1, 2025.................................................26

Juliet Stumpf, *The Crimmigration Crisis: Immigrants, Crime, and Sovereign Power*, 56 AM. U. L. REV. 367, 379–86 (2006).......................................26

Henry Weinstein, *Final Two L.A. 8 Defendants Cleared*, LA Times (Nov. 1, 2007). ........................................................23

# INTRODUCTION AND STATEMENT OF AMICI[1]

*Amici curiae* are more than one hundred leading lawyers, law professors, and scholars who practice, write about, research, and teach immigration law.[2] *Amici* collectively have many centuries of experience representing individuals at all stages of their immigration proceedings and in federal court. Regardless of their differing views on recent campus protests and the war in the Middle East, *amici* are united in finding that the government's detention of Mahmoud Khalil is unlawful, and that the federal courts have power to order his release from unlawful imprisonment. *Amici* have a strong interest in the outcome of this case. It is crucial that federal courts retain their longstanding authority to prevent unlawful imprisonment by Executive Branch officials. That is particularly so in this case, as allowing the federal government to jail immigrants based on peaceful political speech will have devastating effects on immigrants, upend the practice of immigration law, and chill protected First Amendment speech not just on campuses but in communities nationwide.

---

[1] Petitioner and Respondents have consented to the filing of this brief. No party or its counsel had any role in authoring this brief. No person or entity—other than *amici* and their counsel—contributed money that was intended to fund preparing or submitting this brief. Fed. R. App. P. 29(a)(4)(E).

[2] A list of *amici* is set forth in Appendix I. The positions taken in this brief are those of *amici* alone and should not be attributed to any institution with which *amici* are or have been affiliated.

**ARGUMENT**

Respondents take the remarkable view that the federal courts have no power to determine whether the government has illegally imprisoned Khalil, a lawful permanent resident, asserting that Congress foreclosed challenges to detention incident to removal proceedings in 8 U.S.C. § 1252(g), even though the Supreme Court and this Court have repeatedly considered such challenges on their merits in the years since Section 1252(g)'s passage.

Alternatively, Respondents take the even stranger position that if the federal courts have power to resolve Khalil's claims, they must wait until his entire removal proceedings are over—a process that could take years—before he can challenge the legality of his detention *during* those same proceedings, under 8 U.S.C. §§ 1252(a)(5) and (b)(9).

The government's positions are meritless. Khalil's habeas petition challenges his detention as imposed punitively and in retaliation for his constitutionally protected speech. His claims are not barred by 1252(g) because they do not challenge the decision to "commence proceedings, adjudicate cases, or execute removal orders." 8 U.S.C. § 1252(g). And he is not required to languish in detention for years before raising a challenge to his detention under 1252(a)(5) and (b)(9) because his claims are conceptually distinct from his challenge to his

removal. Moreover, *amici* are unaware of the government having ever relied on 8 U.S.C. § 1227(a)(4)(C) to deport a permanent resident for political speech.

## I.  8 U.S.C. § 1252(g) DOES NOT BAR JUDICIAL REVIEW.

The government's contention that 1252(g) bars all review of Khalil's challenges to his detention is plainly foreclosed by binding precedent construing that provision narrowly. Moreover, construing the "arising from" language of 1252(g) to bar all detention-related claims would raise serious constitutional concerns under the Suspension Clause.

As the Supreme Court held in *Reno v. American-Arab Anti-Discrimination Committee (AADC)*, 1252(g) bars review only over claims challenging the three discrete exercises of "prosecutorial discretion" covered by 1252(g)—"the decision or action . . . to *commence* proceedings, *adjudicate* cases, or *execute* removal orders." 525 U.S. 471, 482 (1999) (emphasis in original). There are "many other decisions or actions that may be part of the deportation process," but challenges to them are not barred. *Id*.; *see also Zadvydas v. Davis*, 533 U.S. 678, 688 (2001) (holding 1252(g) did not bar detention claim challenging "the extent of the Attorney General's authority" rather than the "exercise of discretion").

Here, Khalil's habeas petition challenges his detention and the policy that produced those actions. It does not challenge the decision to *commence* removal

proceedings against him, let alone the decision to *adjudicate* his case, or *execute* any removal order.

Khalil's detention claims are not barred by 1252(g) because the decision to detain is legally separate from the decision to remove. Removal proceedings are commenced by the filing of a Notice to Appear with the immigration court. 8 C.F.R. § 1239.1. A decision to detain may occur before or after that filing. Removal cases are regularly adjudicated without the non-citizen being detained, and the government does not contend it is legally required to detain Khalil to adjudicate his case.

Respondents nonetheless contend his detention claim falls within 1252(g), arguing "the statute bars district courts from hearing challenges to the *method* by which the Secretary of Homeland Security chooses to commence removal proceedings—including whether to detain an alien pending removal proceedings." Resp. Br. at 28. But Khalil's removal proceedings are just one of many but-for causes of his detention, and if that were sufficient then 1252(g) would bar all detention claims. *But see, e.g.*, *Zadvydas,* 533 U.S. at 688; *Black v. Decker*, 103 F.4th 133 (2d Cir. 2024) (addressing detention claims on the merits).[3]

---

[3] Even as to removal proceedings, courts have consistently exercised judicial review over challenges to the government's *authority* to commence proceedings, distinguishing this from the discretionary *decision* to commence proceedings. *Garcia v. Att'y Gen.,* 553 F.3d 724, 729 (3d Cir. 2009).

Other circuits have recognized that 1252(g) does not bar jurisdiction over habeas challenges to detention. *See Kong v. United States*, 62 F.4th 608, 617 (1st Cir. 2023) (holding petitioner's illegal arrest and detention claims based on lack of warrant and regulatory violations were "plainly collateral to ICE's prosecutorial decision to execute Kong's removal"); *Arce v. United States*, 899 F.3d 796, 799–800 (9th Cir. 2018) (FTCA claim for false arrest and imprisonment based on government's violation of stay of removal not barred by 1252(g)); *Madu v. Att'y Gen.*, 470 F.3d 1362, 1368 (11th Cir. 2006) (challenge to legality of detention not barred by 1252(g) because distinct from decision to execute removal order); *Parra v. Perryman*, 172 F.3d 954, 957 (7th Cir. 1999) (1252(g) did not bar claims "concern[ing] detention," which "may be resolved without affecting pending [removal] proceedings").

Finally, Khalil's challenge to the government's policy of targeting noncitizens for their protected speech is not barred by 1252(g). A challenge to the lawfulness or constitutionality of a policy does not *arise from* a decision to commence removal proceedings, adjudicate cases, or execute a removal order. *See, e.g., DHS v. Regents of the Univ. of Cal.*, 591 U.S. 1, 19 (2020) (stressing that 1252(g) is "narrow" and finding that it did not bar challenge to rescission of DACA policy); *cf. Ali v. Mukasey,* 524 F.3d 145, 150 (2d Cir. 2008) (suggesting claim would not be barred if petitioner alleged being placed in removal

proceedings "unlawfully or for reasons that would offend the Constitution"). In this respect, this case also differs from *Ragbir v. Homan*, 923 F.3d 53 (2d Cir. 2019) and *AADC* itself, where petitioners sought to enjoin the execution of otherwise valid final removal orders on First Amendment grounds.

## II. 8 U.S.C. § 1252(b)(9) DOES NOT BAR JUDICIAL REVIEW.

Respondents' argument that, under 1252(a)(5) and (b)(9), Khalil's challenges cannot be heard unless and until he is ordered removed and he seeks judicial review of that removal order, is equally meritless, for two reasons. First, consistent with its plain text and Justice Breyer's opinion in *Jennings v. Rodriguez*, 1252(b) only concerns claims arising in the context of the review of removal orders. 583 U.S. 281, 355 (2018) (Breyer, J., dissenting on other grounds). Second, even if 1252(b)(9) is not so limited, it does not bar review of claims challenging unlawful detention, which do not "arise from" removal proceedings, and foreclosing such claims would render detention "effectively unreviewable," presenting serious constitutional problems. *See id*. at 293 (Alito, J.) (plurality).

### A. The Plain Language of 1252(b) is Limited to Claims Arising from Review of Removal Orders.

The opening text of 8 U.S.C. § 1252(b) limits application of all its provisions to claims arising from review of removal orders under 1252(a)(1). It states:

(b) *Requirements for review of orders of removal*

6

> *With respect to review of an order of removal* under subsection (a)(1), the following requirements apply
> . . .

8 U.S.C. § 1252(b) (emphasis added). Section 1252(b)(9), like the other provisions of subsection 1252(b), follows this language. Therefore, its requirements apply only "with respect to review of" removal orders. Because Khalil is not seeking review of a removal order—the Immigration Judge vacated the removal order on July 31, 2025, Resp. Br. at 13—the provisions of 1252(b) simply do not apply to him.

Amici's plain-language interpretation of 1252(b)(9) was embraced by Justice Breyer in *Rodriguez*, who relied on the language emphasized above to conclude the Court had jurisdiction over the detention claims at issue there. *Rodriguez*, 583 U.S. at 355 (Breyer, J., dissenting on other grounds) ("Jurisdiction [] is unaffected by 8 U.S.C. § 1252(b)(9), which by its terms applies only '[w]ith respect to review of an order of removal under [§ 1252(a)(1)].' . . . The respondents challenge their detention without bail, not an order of removal.").

The Ninth Circuit has also adopted that interpretation, explaining that a claim challenging the detention of a non-citizen whose removal case remained pending was not subject to 1252(b)(9), which, "[b]y its terms, does not apply to federal habeas corpus petitions that do not involve final orders of removal." *Nadarajah v. Gonzales*, 443 F.3d 1069, 1075–76 (9th Cir. 2006) (emphasis

added). The court reaffirmed that conclusion in *Singh v. Gonzalez,* which explained that "[b]y virtue of their explicit language, both §§ 1252(a)(5) and 1252(b)(9) *apply only to those claims seeking judicial review of orders of removal*." 499 F.3d 969, 978 (9th Cir. 2007) (emphasis added). While *Singh* acknowledged that § 1252(b)(9) covers "any action taken or proceeding brought to remove an alien," the court interpreted that phrase "simply [to] mean[ ] that if the alien fails to consolidate his claims as required under § 1252(b)(9), he may not later bring a separate habeas claim to raise 'questions of law or fact' that should have been brought as part of a challenge to his final order of removal." *Id*. at n.11. Here, as in *Nadarajah*, "there is no final removal order," 443 F.3d at 1076, only a vacated removal order, so 1252(b)(9) does not apply.

Justice Alito's lead plurality opinion in *Rodriguez* also strongly supports Petitioner's position here. Alito's opinion held there *was jurisdiction* to review the detention claims in *Rodriguez*, albeit without either endorsing or rejecting Justice Breyer's approach. The plurality did not "attempt to provide a comprehensive interpretation" of the scope of § 1252(b)(9), 585 U.S. at 294, but still rejected a broad reading of "arising from" that "would [ ] make claims of prolonged detention effectively unreviewable." *Id*. at 293 (plurality opinion). It also noted that a literal interpretation of "arising from" could encompass virtually any removal-related action, because if action to remove a noncitizen "had never been taken, the

8

[noncitizen] would not be in custody at all." *Id.* Rejecting that interpretation, the plurality observed that "cramming judicial review" of questions such as detention-related injuries and conditions claims "into the review of final removal orders would be absurd." *Id.* It further cautioned against "uncritical literalism" when interpreting "capacious phrases like 'arising from'" that would "lead[] to results that no sensible person could have intended." *Id.* at 293–94 (internal quotation marks omitted). Ultimately, the plurality concluded that it had jurisdiction to address at least those claims that did not seek review of an order of removal (Justice Breyer's position) or challenge any part of the process by which removability would be determined—including detention claims like those at issue in *Rodriguez* itself. *Id.* at 294. Thus, Khalil's claim is plainly cognizable under the *Rodriguez* plurality's logic. Forcing him to wait until his removal proceedings have concluded before he can challenge the legality of his detention renders his challenge "effectively unreviewable."[4]

The Third Circuit also adopted this approach. First, like the petitioner in *Chehazeh*, Mr. Khalil is "not seeking review of any order of removal—as there has

---

[4] Only Justice Thomas, joined by Justice Gorsuch, interpreted 1252(b)(9) so broadly that it would confine "challenge[s] to the *fact* of [a noncitizen's] detention" to the petition-for-review process. *Id.* at 319 (Thomas, J., dissenting) (emphasis in original). As Justice Thomas's dissent acknowledges, the plurality "dismisse[d] this 'expansive interpretation' because it would lead to 'staggering results.'" *Id.* at 319 (quoting plurality opinion).

been no such [final] order with respect to him—[therefore] § 1252(b)(9) does not preclude judicial review." *Chehazeh v. Att'y Gen. of U.S.*, 666 F.3d 118, 132–33 (3d Cir. 2012). Subsequently, the Third Circuit relied on the opinions in *Rodriguez* in finding that 1252(b)(9) does not apply if it would prevent any meaningful review. The Third Circuit instructed lower courts to ask, "If not now, when?" in addressing whether judicial review is barred under 1252(b)(9). *E.O.H.C. v. Secretary of DHS,* 950 F.3d 177, 186 (3d Cir. 2020). "If the answer would [ ] be never, then § 1252(b)(9) poses no jurisdictional bar. " *Id.* (holding that judicial review of an interim return to Mexico, rather than permanent removal to Guatemala, was not barred by 1252(b)(9)).

The Third Circuit also considered some instructive hypotheticals, such as "a detained alien who needs halal or kosher food, or a diabetic who alleges that the Government is depriving him of insulin," or "a challenge to prolonged detention," reasoning that judicial review cannot be delayed until after final order of removal in such situations, since "the final order of removal may never come," or "review and relief may come too late to redress these conditions of confinement." *Id.* at 186 (citing *Rodriguez*, 583 U.S. at 293, and *McNary v. Haitian Refugee Ctr, Inc.*, 498 U.S. 479, 484 (1991) (construing jurisdiction-stripping provisions to preserve review where "meaningful judicial review . . . would [otherwise] be foreclosed")). Similarly, here, Khalil could not receive any meaningful review of his claim

challenging his detention pending removal proceedings after those proceedings are already over.

Likewise, the D.C. Circuit has held that "1252(b)(9) prevents [a noncitizen] from *relitigating, outside the context of a petition for review, a question decided against him in the removal proceeding*. In ordinary usage, an issue decided in a proceeding arises from the proceeding." *Meza v. Renaud*, 9 F.4th 930, 933 (D.C. Cir. 2021) (emphasis added) (court could not review Meza's claim that he was an arriving alien, which he could have made in a petition for review) (citing *Arise*, *Black's Law Dictionary* (7th ed. 1999)). Khalil is not trying to relitigate any issue decided against him in his removal proceeding.

Unsurprisingly, Respondents cite no cases dismissing claims challenging detention pending completion of removal proceedings under 1252(a)(5) and (b)(9). *Cf. Ajlani v. Chertoff*, 545 F.3d 229, 235 (2d Cir. 2008) (claim barred where plaintiff sought order declaring "the then-pending removal proceedings against him [ ] unconstitutional"); *see also Gonzalez-Alarcon v. Macias*, 884 F.3d 1266, 1275 (10th Cir. 2018) (finding claim potentially barred because it was "based on the alleged invalidity of his order of removal," but not dismissing due to potential Suspension Clause concerns).

Nonetheless, Respondents now ask this Court to adopt the view of only two Justices in *Rodriguez*. This Court should decline that invitation. In rejecting Justice

Breyer's interpretation, Justice Thomas's opinion made four main arguments, none of which is persuasive. First, he contends that limiting 1252(b)(9) to review of final orders of removal would read the phrase "or such questions of law or fact" out of the statute. *Rodriguez,* 583 U.S. at 320 (Thomas, J., dissenting). But his approach reads the prefatory clause out of the statute, as it renders that clause entirely meaningless—a point he essentially acknowledges in arguing that it does not change the scope of the provision in any way. *Id.* at 320–21. In any event, Justice Breyer's interpretation does not render the phrase "or such questions of law or fact" in 1252(b)(9) meaningless. At a minimum, it could refer to questions arising in ancillary litigation that ensues after a removal order is entered, including in motions to reopen, challenges related to the country designated for deportation, humanitarian claims under withholding of removal or the Convention Against Torture. *See, e.g.*, *Monsalvo Velasquez v. Bondi*, 145 S. Ct. 1232, 1241 (2024) (finding jurisdiction in petition for review to address question arising from litigation ancillary to final removal order). In contrast, because issues involving detention are not addressed in removal proceedings or by orders of removal, they are outside the purview of 1252(b)(9). This also makes sense of the regulatory structure, as immigration courts have separate custody redetermination proceedings (bond hearings), with a separate record of proceedings, to address detention. 8 C.F.R. § 1003.19(d) (respondent's request "regarding custody or bond under this

section *shall be separate and apart from, and shall form no part of, any deportation or removal hearing or proceeding*.") (emphasis added).

Second, Justice Thomas contends that Justice Breyer's interpretation renders superfluous 1252(a)(5), which specifies that a petition for review is the sole means of judicial review of an order of removal. *Rodriguez*, 583 U.S. at 305. This is simply incorrect. 1252(a)(5) specifies that the proper forum for challenging a final order of removal is the federal courts of appeal, while the "zipper clause" in 1252(b)(9) clarifies that all challenges related to that final order of removal must be brought together in a consolidated manner, rather than piecemeal. As the Supreme Court recognized in *AADC*, even minor differences between bars on judicial review can justify their existence. 525 U.S. 471, 483 (1999) (rejecting the argument "that § 1252(g) is redundant if it channels judicial review of only *some* decisions and actions, since § 1252(b)(9) channels judicial review of *all* of them anyway. . . . since only § 1252(g), and *not* § 1252(b)(9) . . . applies to . . . cases pending on the effective date of IIRIRA," which "alone justifies its existence") (emphasis in original).

Third, Justice Thomas argues that *AADC* and *St. Cyr* did not limit 1252(b)(9) to review of final orders of removal. However, neither of those cases addressed the scope of 1252(b)(9). *AADC* held that 1252(g) barred jurisdiction over selective prosecution claims where the noncitizens had final orders of removal

and challenged the decision to execute those orders. Indeed, the plurality in *Rodriguez* cited *AADC* as *supporting* its narrow interpretation of "arising from" in 1252(b)(9). *Rodriguez*, 583 U.S. at 294.

*St. Cyr* also does not support Justice Thomas's unjustifiably broad interpretation of 1252(b)(9). Not only did the Supreme Court reject the government's arguments that 1252(b)(9) barred judicial review in *St. Cyr*, but the Court stressed that the absence of "another judicial forum" where a question of law could be answered, "coupled with the lack of a clear, unambiguous, and express statement of congressional intent to preclude judicial consideration on habeas of such an important question of law, strongly counsels against adopting a construction that would raise serious constitutional questions." *I.N.S. v. St. Cyr*, 533 U.S. 289, 314 (2001). This language supports the Third Circuit's approach of finding jurisdiction where meaningful review would otherwise be foreclosed, including, for example, where lengthy detention would have already taken place by the time a petition for review of a removal order is considered. Justice Thomas offers no persuasive justification for an approach that would preclude meaningful review over an important class of detention claims. *Rodriguez,* 583 U.S. at 321 (Thomas, J., dissenting). The plurality was rightly concerned that Justice Thomas's "extreme" interpretation would make claims of prolonged detention effectively unreviewable. 583 U.S. at 293.

The Supreme Court's post-*Rodriguez* cases offer further support for exercising jurisdiction in Khalil's case. In *Nielsen v. Preap*, 586 U.S. 392 (2019), the Justices took the same positions as in *Rodriguez*, with a three-Justice plurality echoing the view that 1252(b)(9) does not bar challenges to detention, while Thomas and Gorsuch restated their position from *Rodriguez*. A year later, the Supreme Court once again confirmed that 1252(b)(9) "'does not present a jurisdictional bar' where those bringing suit 'are not asking for review of an order of removal,' 'the decision . . . to seek removal,' or 'the process by which . . . removability will be determined.'" *Regents of the Univ. of California*, 591 U.S. at 19 (quoting the plurality opinion in *Rodriguez* while also citing Justice Breyer's dissent).

> **B.** **Detention Does Not "Arise From" An Action or Proceeding to Remove a Noncitizen from the United States.**

Even if this Court does not limit 1252(b)(9) to review of final orders of removal, the language still is not broad enough to include challenges to detention. The First and Ninth Circuits have repeatedly held that 1252(b)(9) does not foreclose challenges to detention, and the Third and Sixth Circuits have exercised jurisdiction over challenges related to removal proceedings. The question here is whether Khalil's detention "*aris[es] from* any action taken or proceeding brought to remove a [noncitizen]," and the simple answer is no. 8 U.S.C. § 1252(b)(9) (emphasis added).

The Second Circuit has addressed the "arising from" language in 1252(a)(5), holding that the distinction between an independent claim and an indirect challenge to a removal order "will turn on the substance of the relief that a plaintiff is seeking." *Delgado v. Quarantillo*, 643 F.3d 52, 55 (2d Cir. 2011). In *Delgado*, the petitioner was indirectly challenging her reinstated order of removal, so the court held that section 1252(a)(5)'s jurisdictional bar applied. Here, Khalil challenges the constitutionality of his retaliatory detention, which cannot be addressed in his removal proceedings. *See Michalski v. Decker*, 279 F. Supp. 3d 487, 494 (S.D.N.Y. 2018) (applying the "substance of the relief" test and holding the petitioner's "challenge to the constitutionality of his arrest and detention is not barred by § 1252(b)(9)").

The Ninth and First Circuits have already recognized that challenges to detention do not "arise from" removal-related actions or proceedings. *See Gonzalez v. ICE*, 975 F.3d 788, 810–11 (9th Cir. 2020) (holding that section 1252(b)(9) did not bar jurisdiction "because claims challenging the legality of detention pursuant to an immigration detainer are independent of the removal process"); *Hernández v. Gonzales*, 424 F.3d 42, 42–43 (1st Cir. 2005) (holding that detention claims are independent of removal proceedings and therefore not barred by section 1252(b)(9)); *Aguilar v. ICE*, 510 F.3d 1, 11 (1st Cir. 2007) (identifying "challenges to the legality of detention" as squarely outside 1252(b)(9)'s scope).

Additionally, the Third and Sixth Circuits have exercised jurisdiction over challenges related to removal proceedings but not involving final orders of removal. *See E.O.H.C.*, 950 F.3d at 194 (holding that an interim removal to Mexico and a constitutional right-to-counsel claim did not arise from removal proceedings and could not await later review); *Hamdi ex rel. Hamdi v. Napolitano*, 620 F.3d 615, 626 (6th Cir. 2010) ("We, like the First Circuit in *Aguilar,* cannot endorse an interpretation of the 'arising from' language in § 1252(b)(9) that 'swallow[s] all claims that might somehow touch upon, or be traced to, the government's efforts to remove an alien.'") (quoting *Aguilar*, 510 F.3d at 10).

### C. The Government's Interpretation Requiring Khalil to Bring His Claims in a Petition for Review Would Render Them Effectively Unreviewable, Raising Serious Constitutional Problems

Under Respondents' interpretation, Khalil could potentially go for months before receiving judicial review of the lawfulness of his detention. First, he would need to wait for months in detention while the Immigration Judge adjudicates his case. If he wins and a removal order is never issued, his detention claim would have proven entirely unreviewable—he would have been subjected to pointless unlawful imprisonment, but no court would ever have had the power to address it. If he loses, he would need to wait months more for the Board of Immigration Appeals (BIA) to decide his appeal. If his appeal is granted, he would win his removal case, again without ever having had the opportunity to obtain judicial

17

review of his detention claim. If his BIA appeal is denied, he would need to file a petition for review with the circuit court, and only then could get judicial review of his detention claim. Respondents' reading of 1252(b)(9) would permit ICE to arrest and detain Khalil, and potentially many thousands more lawful permanent residents and others, without any statutory or constitutional constraints.

As courts have recognized, the phrase "arising from" is not "infinitely elastic" and does not reach "claims that are independent of, or wholly collateral to, the removal process," or that bear "only a remote or attenuated connection to the removal of an alien." *Aguilar*, 510 F.3d at 10–11. Claims seeking review of the legality of a petitioner's detention fall outside the reach of the "arising from" language. *Id.*; *see also Kong*, 62 F.4th at 614.

As described above, the legislative history confirms that Congress intended to preserve habeas review of detention when it amended the INA to include the current language of 1252(b)(9) as part of the REAL ID Act of 2005, Pub. L. No. 109–13, § 106, 119 Stat. 302, 310-11. The Conference Report accompanying the passage of those amendments specifies that 1252(b)(9) would "*not preclude habeas review over challenges to detention* that are independent of challenges to removal orders, the bill would eliminate habeas review *only over challenges to removal orders.*" H.R. Rep. 109-72, at 175 (2005) (Conf. Rep) (emphasis added). This statement appears after an extensive examination of Supreme Court and

circuit court precedents describing the kinds of jurisdiction-stripping provisions that would not violate the right to habeas corpus, indicating that Congress was attentive to the constitutional concerns with limiting habeas relief. *Id.* at 174–75; *see also Aguilar*, 510 F.3d at 11 (relying on the Conference Report in finding judicial review preserved over challenges to detention and noting the need for "clear and convincing evidence of legislative intent before restricting access to judicial review entirely.").[5]

The canon of constitutional avoidance likewise requires interpreting statutes to preserve habeas review of detention claims. *See Crowell v. Benson*, 285 U.S. 22, 62 (1932) (describing constitutional avoidance as a "cardinal principle" of statutory interpretation"); *Zadvydas v. Davis*, 533 U.S. 678, 689 (2001) (same). The Court has "read significant limitations into . . . immigration statutes in order to avoid their constitutional invalidation." *Id*. Any interpretation of 1252(b)(9) that bars judicial review of habeas petitions challenging detention would raise serious constitutional concerns under the Suspension Clause and should be avoided. Given

---

[5] Insofar as *Aguilar* found that the reach of 1252(b)(9) is not limited to challenges to singular orders of removal, this interpretation was criticized by the Third Circuit in *Chehazeh v. Att'y Gen. of United States,* where the court stated that the reasoning of *Aguilar* "appears to conflict with the Supreme Court's explicit instruction in *St. Cyr . . .* and with the language of § 1252(b)." 666 F.3d 118, 133 (3d Cir. 2012).

that there is an alternative reading—one that simply applies the plain text—this Court should adopt it.

**D. Article III Courts Routinely Exercise Jurisdiction Over Agency Actions Where Plaintiffs Allege Constitutional Violations and Their Claims Would Be Lost If Article III Review Were Deferred Until After the Administrative Process**

In contexts other than immigration, Article III courts routinely exercise jurisdiction to consider allegations of constitutional violations by federal agencies where petitioners have no other avenue for meaningful review. As the Supreme Court recently explained, robust Article III review of agency actions is essential to our constitutional structure. "To ensure the steady, upright and impartial administration of the laws, the Framers structured the Constitution to allow judges to exercise that judgment independent of influence from the political branches." *Loper Bright Enter. v. Raimondo*, 603 U.S. 369, 385 (2024) (citation modified). This principle is particularly important where, as here, a petitioner alleges constitutional violations the executive agency is not equipped to address.

Recent cases from the U.S. Supreme Court demonstrate the wide scope of Article III jurisdiction to consider allegations of constitutional violations by federal agencies. For example, in *Axon Enter., Inc. v. Fed. Trade Comm'n*, respondents in separate enforcement actions initiated before the Securities and Exchange Commission and the Federal Trade Commission filed suit in federal district court challenging the constitutionality of agency proceedings against them. 598 U.S. 175

(2023). There, the Court concluded that "agency adjudications are generally ill-suited to address structural constitutional challenges," *id.* at 195 (quoting *Carr v. Saul,* 593 U.S. 83, 84 (2021), and allowed the respondents to proceed in federal court with their constitutional claims. Otherwise, the Court explained, the respondents' claims would be "'effectively lost' if review [were] deferred until after [the administrative process]." *Id.* at 192.

Likewise, in the context of the Social Security Administration, the Court recently ruled that Article III courts had jurisdiction to consider petitioners' "purely constitutional claims" about which administrative law judges "have no special expertise and for which they can provide no relief." *Carr*, 593 U.S. at 84. The Court has reached similar conclusions about federal court jurisdiction to review constitutional claims in the context of the Securities and Exchange Commission where the petitioners had no other "meaningful avenue of relief" and their "constitutional claims [were] also outside the Commission's competence and expertise." *Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477, 489, 491 (2010).

Even in the context of the Central Intelligence Agency (CIA) and over the CIA's objections, the Court found that Article III jurisdiction should be exercised where a terminated employee "alleged a number of constitutional violations," including that his termination "deprived him of property and liberty interests under

the Due Process Clause of the Fifth Amendment, denied him equal protection of the laws, and unjustifiably burdened his right to privacy." *Webster v. Doe*, 486 U.S. 592, 601–02 (1988). The Court explained that such colorable constitutional claims would require a heightened showing for preclusion of judicial review and reaffirmed that the federal district court would be well-situated to balance national security concerns against the need for due process in discovery. *Id.* at 604.

Earlier, the Court similarly exercised jurisdiction to consider First Amendment and Fifth Amendment claims brought against the Veterans' Administration (VA), reasoning that not doing so would "raise serious questions concerning the constitutionality" of a statute that purports to prohibit judicial review of VA decisions. *Johnson v. Robinson*, 415 U.S. 361, 365–66 (1974). The Court also recognized the importance of exercising Article III jurisdiction to review a Selective Service System Local Board's actions that were so "basically lawless" that they essentially presented constitutional implications. *Oestereich v. Selective Serv. Sys. Loc. Bd. No. 11*, 393 U.S. 233, 237 (1968).

The Third Circuit has likewise found Article III jurisdiction to review allegations of constitutional violations where the administrative process is insufficient for meaningful review. In *Kreschollek v. S. Stevedoring Co.*, 78 F.3d 868 (3d Cir. 1996), the Third Circuit concluded that a longshoreman was not required to bring a constitutional challenge within the Longshore and Harbor

Workers' Compensation's administrative scheme because that scheme "is insufficient to provide [a petitioner] the full relief to which [they] may be entitled." *Id.* at 874. The Third Circuit concluded that the federal district court had jurisdiction to hear the longshoreman's constitutional claim to a pre-termination hearing. *Id.* at 875.

As in each of these contexts, the federal courts have jurisdiction to consider Khalil's First Amendment claims. The INA's channeling provision at 8 U.S.C. 1252(b)(9) must be construed to allow habeas review of First Amendment claims; otherwise, Khalil's speech and that of thousands of others will have been irreversibly chilled by the time the petition for review process is completed.

### III. *AMICI* ARE UNAWARE OF THE GOVERNMENT HAVING EVER RELIED ON 8 U.S.C. § 1227(A)(4)(C) TO DEPORT A PERMANENT RESIDENT SOLELY FOR POLITICAL SPEECH.

It is not unusual for permanent residents to be placed in removal proceedings. Nor is it unprecedented for the government to single out Palestinians or those who express pro-Palestinian views where they have allegedly violated some other provision of the immigration laws.[6] However, the use of the foreign policy ground is extraordinarily rare, and we are unaware of it ever having

---

[6] Henry Weinstein, *Final Two L.A. 8 Defendants Cleared*, LA Times (Nov. 1, 2007).

been used as the sole charge against a lawful permanent resident, let alone in a case where the underlying conduct was itself political speech, prior to March 2025.

The implications of the foreign policy ground are by no means limited to noncitizens who engage in pro-Palestinian speech. The presence of Ukrainians who are critical of Russia, supporters of more security cooperation with Europe, and economists skeptical of tariffs on Mexico, Canada, and China, could all suddenly be considered adverse to U.S. foreign policy interests and subject to deportation based on the unilateral determination of the Secretary of State. This list has no end, and no meaningful limiting principles. In *Massieu v. Reno*, the government's reliance on the foreign policy deportability ground was based on "nothing more than the obstinacy of a foreign sovereign that is high on the list of nations that the United States must not offend or disappoint." 915 F. Supp. 681, 700 n.18 (D.N.J.), *rev'd on other grounds*, 91 F.3d 416 (3d Cir. 1996).

During the 35 years that the foreign policy deportability ground has been in existence until March 2025, only one federal district court had an opportunity to address it, and that court determined it was unconstitutional in 1996. *Massieu*, 915 F. Supp. at 686. The district court in *Massieu* described this ground as a "breathtaking departure" from "deportation based on adjudications of defined impermissible conduct." *Id.* The Third Circuit reversed the decision based on its

finding that the plaintiff had not exhausted administrative remedies but never reached the constitutional questions. *Massieu v. Reno*, 91 F.3d 416 (3d Cir. 1996).

The foreign policy deportability ground was introduced in 1990 and originally codified at 8 U.S.C. § 1251(a)(4)(C) (INA § 241(a)(4)(C)).[7] The use of this provision to seek an individual's deportation is almost unprecedented in this ground's 35-year history. In this case, the district court ordered the government to provide a list of all instances in which the government has invoked Section 1227(a)(4)(C)(i) (INA § 237(a)(4)(C)(i)) or any predecessor statutes to seek the removal of individuals from the United States. *Khalil v. Trump*, No. 25-cv-1963 (MEF) (D.N.J.), Order, Dkt. No. 231. In response to the district court's order, the government identified a total of five cases originating before March 2025. *Id.*; Govt's Resp., Dkt. No. 241; Govt's Second Resp., Dkt. No. 246. The government's justifications for invoking these charges in the past were materially different from the situation here. For instance, the government claimed to have sought removal under Section 1251(a)(4)(C) of leaders of foreign terrorist or paramilitary

---

[7] In 1996, with the passage of the Illegal Immigration Reform and Immigrant Responsibility Act, Pub. L. No. 104–208, the provision was transferred to INA § 237(a)(4)(C).

organizations, or individuals charged or convicted of crimes. Dkt. No. 241.[8] The

one individual whom the government sought to remove under Section

1227(a)(4)(C) before March 2025 had "participated in and/or contributed to violent

political activity in Somalia." *Id*.

The government stated that these may not be the only instances of the

statute's invocation. However, the government's own data and published

immigration decisions reveal strikingly few cases. Based on publicly available data

from the Executive Office of Immigration Review (EOIR) and published BIA

decisions, out of 11.7 million cases, DHS has invoked Section 1251(a)(4)(C)(i) or

Section 1227(a)(4)(C)(i) as a removal charge in *only fifteen cases* before March

2025, when ICE arrested and charged Khalil under this ground,[9] and attempted to

arrest Yunseo Chung, another lawful permanent resident, for the same reason.[10]

---

[8] It is plausible that the use of the foreign policy ground for seeking deportation
based on criminal activities and terrorism has decreased since the 1990s, as the
INA expanded crime- and terrorism-related deportation grounds. *See* Juliet Stumpf,
*The Crimmigration Crisis: Immigrants, Crime, and Sovereign Power*, 56 AM. U. L.
REV. 367, 379–86 (2006).

[9] Charlie Savage, *Congress Wrote a Deportation Law to be Used 'Sparingly.'
Trump Has Other Ideas*, N.Y. Times, Apr. 1, 2025.

[10] Jonah E. Bromwich and Hamed Aleaziz, *Columbia Student Hunted by ICE Sues
to Prevent Deportation*, N.Y. Times, Mar. 4, 2025.

Only five of those cases involved detention throughout the proceeding.[11] Decl. of Graeme Blair, Ph.D., and David Hausman, J.D., Ph.D. ("Blair and Hausman Decl."), Appendix II, Exh. A ¶¶ 7, 14. In just seven of these fifteen cases, the foreign policy deportability ground was the sole charge alleged throughout the proceeding. *Id*. ¶ 14. Out of those seven cases, just *one* individual was detained throughout the proceeding. *Id*. Only four individuals ever were ultimately ordered removed or deported after being charged with removability under this ground. *Id*. That amounts to one person being ordered removed *per decade* under this provision.

What's more, nearly all of these cases arose in the distant past, shortly after the provision was enacted. Focusing on the 25 years before March 2025, the EOIR data reflect that Section 1227(a)(4)(C)(i) has been invoked only *four times*, and *only twice* has it been the sole charge alleged throughout the proceeding. *Id*. ¶ 13. We have not been able to determine whether either of the two charged individuals over the past 25 years were lawful permanent residents—and narrowing further, whether they were charged for only their speech. But neither of those two

---

[11] In the EOIR data, cases may not necessarily mean different individuals. Appendix II (*Blair and Hausman Decl.*), Exh. A ¶7. Therefore, it is possible that this charge has been invoked against even fewer than fifteen individuals.

individuals was detained throughout their immigration proceedings. *Id*. ¶ 14. These numbers may even be a significant overcount due to the possibility of errors in the data and the extreme rarity in which these charges have been invoked. *Id.* ¶ 8-9. Regardless, invoking the statute based solely on political speech by a permanent resident (and detaining him), makes the government's assertion of authority here extraordinary—indeed, vanishingly rare.

The BIA decision in Massieu's case confirms that the foreign policy deportability ground "has been used very rarely." *Matter of Ruiz-Massieu*, 22 I&N Dec. 833, 838 (BIA 1999) (citing *Matter of Khalifah*, 21 I&N Dec. 107 (BIA 1995), as "the only published Board case").[12] The government's decision to invoke this charge against Khalil, a lawful permanent resident who engaged in constitutionally protected speech, and to detain him, is alarming given this history. The data discussed above support the argument that this case presents "extraordinary circumstances" that justify Khalil's release on bail under *Mapp v. Reno*, 241 F.3d 221, 230 (2d Cir. 2001).

---

[12] *Amici* have exhaustively searched unpublished BIA cases involving Section 1251(a)(4)(C) or Section 1227(a)(4)(C) and have found none.

## CONCLUSION

For the foregoing reasons, this Court should deny the government's appeal and affirm the district court's order.

DATED: September 17, 2025    Respectfully submitted,

/s/ Fatma Marouf

Fatma Marouf
Professor of Law
Texas A&M School of Law
1515 Commerce St.
Fort Worth, TX 76102
Tel: (817) 212-4123
fatma.marouf@law.tamu.edu
(in her individual capacity)

Ahilan Arulanantham
Professor from Practice
UCLA School of Law
385 Charles E. Young Dr. East
Los Angeles, CA 90095
Tel: (310) 825-1029
arulanantham@law.ucla.edu
(in his individual capacity)

Amber Qureshi
Law Office Amber Qureshi, LLC
6925 Oakland Mills Rd, PMB #207
Columbia, MD 21045
Tel: (443) 583-4353
amber@qureshilegal.com

Elora Mukherjee
Jerome L. Greene Clinical Professor of Law
Columbia Law School
Morningside Heights Legal Services, Inc.

435 W. 116th Street, Room 831
New York, NY 10027
Tel: (212) 854-4291
emukherjee@law.columbia.edu
(in her individual capacity)

*Counsel for Amici Curiae*

# CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rules of Appellate Procedure 29 and 32, undersigned counsel certifies that the foregoing brief:

1.  Complies with the type-volume limitation of Local Rules 29.1(c) and 32.1(a)(4)(A) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 6,474 words.

2.  This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.


Dated: September 17, 2025            By:    /s/  Fatma Marouf

                                     Fatma Marouf
                                     Professor of Law
                                     Texas A&M School of Law
                                     1515 Commerce St.
                                     Fort Worth, TX 76102
                                     Tel: (817) 212-4123
                                     fatma.marouf@law.tamu.edu
                                     (in her individual capacity)

                                     *Counsel of Record for Amici Curiae*

**CERTIFICATE OF SERVICE**

I hereby certify that on September 17, 2025, an electronic copy of the brief of amici curiae Immigration Lawyers, Law Professors, and Scholars was filed with the Clerk of the United States Court of Appeals for the Third Circuit by using the ACMS system. I also certify that all participants are registered ACMS users and will be served via the ACMS system.

DATED: September 17, 2025                    /s/  Fatma Marouf

Fatma Marouf
Professor of Law
Texas A&M School of Law
1515 Commerce St.
Fort Worth, TX 76102
Tel: (817) 212-4123
fatma.marouf@law.tamu.edu
(in her individual capacity)

*Counsel of Record for Amici Curiae*