# IN THE UNITED STATES COURT OF APPEALS
# FOR THE THIRD CIRCUIT

———————————

MAHMOUD KHALIL,

Petitioner-Appellee,

v.

PRESIDENT UNITED STATES OF AMERICA; DIRECTOR NEW YORK
FIELD OFFICE IMMIGRATION AND CUSTOMS ENFORCEMENT;
WARDEN ELIZABETH CONTRACT DETENTION FACILITY; DIRECTOR
UNITED STATES IMMIGRATION AND CUSTOMS ENFORCEMENT;
SECRETARY UNITED STATES DEPARTMENT OF HOMELAND SECURITY;
SECRETARY UNITED STATES DEPARTMENT OF STATE; ATTORNEY
GENERAL UNITED STATES OF AMERICA,

Respondents-Appellants.

———————————

On Appeal from the United States District Court
for the District of New Jersey, No. 25-1963 (MEF) (MAH)

———————————

## APPELLANTS' REPLY BRIEF

———————————

BRETT A. SHUMATE
Assistant Attorney General

YAAKOV M. ROTH
Principal Deputy Assistant Attorney
     General

DREW C. ENSIGN
Deputy Assistant Attorney General

BENJAMIN HAYES
Senior Counsel to the Assistant
     Attorney General

ALANNA T. DUONG
Senior Litigation Counsel

ERIKA ARCE-ROMERO
RACHEL L. BROWNING
ANIELLO DESIMONE
JOHN F. STANTON
Trial Attorneys

# TABLE OF CONTENTS

INTRODUCTION ...................................................................................................1

ARGUMENT .........................................................................................................3

    I.    The District Court Exceeded its Habeas Authority ................................3

        A.    The District Court Lacked Habeas Jurisdiction .................................3

        B.    The District Court Ordered Relief Not Available in Habeas ............7

    II.    The INA Divested the District Court of Jurisdiction ...........................7

        A.    8 U.S.C. §1252(g) ............................................................................7

        B.    8 U.S.C. §1252(b)(9) ....................................................................11

    III.    The Court Erred in Granting a Preliminary Injunction ...................17

        A.    Petitioner is not Likely to Succeed on the Merits ...........................17

            1.    The Void-for-Vagueness Doctrine does not Apply ......................17

            2.    The Statute is not Unconstitutionally Vague ..................................18

        B.    Petitioner's Alternative Grounds for Affirmance Fail .....................24

            1.    First Amendment Retaliation ..........................................................24

            2.    Substantive Due Process .................................................................26

        C.    The District Court Erred in Finding Irreparable Harm ..................28

    IV.    The District Court Erred in Ordering Petitioner's Release .............30

CONCLUSION ..................................................................................................32

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aguayo v. Martinez,*
  2020 WL 2395638 (D. Colo. May 12, 2020)....................................................................30

*Aguilar v. U.S. ICE Div. of DHS,*
  510 F.3d 1 (1st Cir. 2007) ..........................................................................13, 15

*Alghadbawi v. Napolitano,*
  2011 WL 4390084 (S.D. Ind. Sept. 19, 2011).................................................................8

*Azar v. Allina Health Servs.,*
  587 U.S. 566 (2019) ......................................................................................21

*Borbot v. Warden, Hudson Co. Correctional Facility,*
  906 F.3d 274 (3d Cir. 2018) ..............................................................................31

*Bouie v. City of Columbia,*
  378 U.S. 347 (1964) ...................................................................................19, 20

*Calzone v. Summers,*
  942 F.3d 415 (8th Cir. 2019) .............................................................................22

*Carlson v. Landon,*
  342 U.S. 524 (1952) ......................................................................................26

*Chehazeh v. Att'y Gen.,*
  666 F.3d 118 (3d Cir. 2012) ..............................................................................12

*Clark v. Martinez,*
  543 U.S. 371 (2005) ......................................................................................23

*Demore v. Kim,*
  538 U.S. 510 (2003) .........................................................................11, 26, 27, 28

*DHS v. Thuraissigiam,*
  591 U.S. 103 (2020) ....................................................................................7, 16

*E.O.H.C. v. DHS,*
  950 F.3d 177 (3d Cir. 2020) ..............................................................................12

*Ex Parte Endo,*
    323 U.S. 283 (1944) ............................................................4

*Garcia v. Att'y Gen.,*
    553 F.3d 724 (3d Cir. 2009) ..............................................9

*German Santos v. Warden Pike Cnty. Corr. Facility,*
    965 F.3d 203 (3d Cir. 2020) ............................................28

*Graham v. Connor,*
    490 U.S. 386 (1989) ..........................................................27

*Greene v. U.S.,*
    13 F.3d 577 (2d Cir. 1994) ..............................................16

*Harisiades v. Shaughnessy,*
    342 U.S. 580 (1952) ..........................................................18

*Hatami v. Chertoff,*
    467 F. Supp.2d 637 (E.D. Va. 2006) ..............................30

*Holder v. Humanitarian L. Project,*
    561 U.S. 1 (2010) ..............................................................23

*Humphries v. Various Fed. USINS Emps.,*
    164 F.3d 936 (5th Cir. 1999) ..........................................13

*In re Kaine,*
    55 U.S. 103 (1852) ............................................................31

*In re Ruiz-Massieu,*
    22 I&N Dec. 833 (BIA 1999) ..........................................14

*In re Revel AC, Inc.,*
    802 F.3d 558 (3d Cir. 2015) ............................................29

*J.E.F.M. v. Lynch,*
    837 F.3d 1026 (9th Cir. 2016) ........................................12

*Jennings v. Rodriguez,*
    583 U.S. 281 (2018) .............................................. 12, 14, 15, 30

*Johnson v. Guzman Chavez,*
    594 U.S. 523 (2021) ..........................................................27

*Johnson v. United States,*
576 U.S. 591 (2015) ...................................................................18

*Johnston v. Marsh,*
227 F.2d 528 (3d Cir. 1955) ........................................................31

*Jordan v. De George,*
341 U.S. 223 (1951) ....................................................................22

*Kong v. United States,*
62 F.4th 608 (1st Cir. 2023) ........................................................11

*Landano v. Rafferty,*
970 F.2d 1230 (3d Cir. 1992) .................................................31, 32

*Lebron v. Nat'l Railroad Passenger Corp.,*
513 U.S. 374 (1995) ....................................................................17

*Lucas v. Hadden,*
790 F.2d 365 (3d Cir. 1986) ...................................................31, 32

*Luna v. Holder,*
637 F.3d 85 (2d Cir. 2011) ..........................................................16

*Massieu v. Reno,*
91 F.3d 416 (3d Cir. 1996) ..........................................................14

*Monteiro v. Att'y Gen.,*
261 F. App'x 368 (3d Cir. 2008) ....................................................4

*Mount Healthy City School District Board of Education v. Doyle,*
429 U.S. 274 (1997) ....................................................................24

*Mullins v. Consol Energy, Inc. Long Term Disability Plan,*
110 F.4th 180 (3d Cir. 2024) ........................................................24

*Ozturk v. Hyde,*
--- F.4th---, 2025 WL 2679904 (Sept. 19, 2025).................. 1, 11, 12, 15

*Planned Parenthood of Ind. & Ky., Inc. v. Marion Cnty., Pros.,*
7 F.4th 594 (7th Cir. 2021) ..........................................................23

*Pub. Int. Rsch. Grp. of N.J., Inc. v. Magnesium Elektron, Inc.,*
123 F.3d 111 (3d Cir. 1997) ..........................................................4

*Rabe v. Washington*,
    405 U.S. 313 (1972) ................................................................................19

*Ragbir v. Homan*,
    923 F.3d 53 (2d Cir. 2019) ............................................................ 9, 10

*Reno v. American-Arab Anti-Discrimination Committee*,
    525 U.S. 471 (1999) ........................................................... 2, passim

*Robinson v. Johnson*,
    313 F.3d 128 (3d Cir. 2002) .....................................................................4

*Rumsfeld v. Padilla*,
    542 U.S. 434 (2004) ........................................................................ 3, 6

*Ruston v. U.S. Dep't of State*,
    29 F. Supp. 2d 518, 522 (E.D. Ark. 1998) ..........................................8

*Schlanger v. Seamans*,
    401 U.S. 487 (1971) ..................................................................................4

*Sessions v. Dimaya*,
    584 U.S. 148 (2018) ...............................................................................18

*Sherley v. Sebelius*,
    644 F.3d 388 (D.C. Cir. 2011) .............................................................24

*Taal v. Trump*,
    2025 WL 926207 (N.D.N.Y. Mar. 27, 2025)......................................8

*Tazu v. Att'y Gen.*,
    975 F.3d 292 (3d Cir. 2020) .......................................... 8, passim

*Trump v. J.G.G.*,
    604 U.S. 670 (2025) .................................................................................7

*United States v. Williams*,
    917 F.3d 195 (3d Cir. 2019) ..................................................................20

*Washington v. Glucksberg*,
    521 U.S. 702 (1997) ...............................................................................27

*Winter v. NRDC*,
    555 U.S. 7 (2008) ....................................................................................31

*Wong v. United States,*
    373 F.3d 952 (9th Cir. 2004) .............................................................13

*Wong Wing v. United States,*
    163 U.S. 228 (1896) ..........................................................................26

*Zadvydas v. Davis,*
    533 U.S. 678 (2001) ..........................................................................28

**Statutes**

8 U.S.C. §1182(a)(5) .............................................................................26

8 U.S.C. §1182(b)(9) .............................................................................26

8 U.S.C. §1182(a)(3)(C)(iii) .......................................................... 2, passim

8 U.S.C. §1226 ...............................................................................27, 28

8 U.S.C. §1226(e) ...........................................................................30, 31

8 U.S.C. §1252(a)(5) ...........................................................11, 12, 13, 26

8 U.S.C. §1252(b)(9) .................................................................... 1, passim

8 U.S.C. §1252(g) ........................................................................ 1, passim

28 U.S.C. §1631 ................................................................................ 3, 4

28 U.S.C. §2347 ...................................................................................15

**Other Authorities**

8 C.F.R. §1003.19(h)(2)(ii) ....................................................................16

Fed. R. Civ. P. 15 .................................................................................15

S. Rep. No. 275, 97th Cong., 1st Sess. 11 (1981) ....................................3

## INTRODUCTION

Petitioner Mahmoud Khalil seeks to remain in the United States after the Secretary of State determined that his notorious actions in support of violent and anti-Semitic protests in the United States would "compromise a compelling United States foreign policy interest." The district court's orders enjoining Petitioner's detention and removal disregarded multiple jurisdictional barriers, employed a deeply flawed analysis in holding a federal statute unconstitutional, and ignored binding precedent in ordering Petitioner's release. This Court should reverse. Petitioner has no right to remain in the United States. That is especially true now that the immigration judge has (once again) found that Petitioner committed immigration document fraud warranting his removal.

The district court's order transgressed numerous statutory limits on its jurisdiction arising from the habeas statute and the Immigration and Nationality Act ("INA"). Petitioner offers no viable response. His habeas arguments run directly into longstanding rules requiring that his habeas petition be brought in the district of confinement. At bottom, Petitioner's efforts to remain in New Jersey are not about ensuring judicial review, but rather simple forum-shopping.

Nor can he evade the INA's limits on federal courts' jurisdiction. He says 8 U.S.C. §1252(b)(9) and (g) do not apply because he is not challenging his detention or removal, but the Secretary's foreign-policy determination—but the whole purpose of the Secretary's determination is to enable removal; the two are inextricably intertwined. *See Ozturk v. Hyde*, --- F.4th---, 2025 WL 2679904, at *2-5 (Sept. 19, 2025)

1

(Menashi, J., joined by Park, J., concurring in the denial of rehearing en banc). And that framing is belied by the district court's injunction, which *directly* targets the removal proceedings, *not* the Secretary's determination. Petitioner is no differently situated than the aliens in *Reno v. American-Arab Anti-Discrimination Committee ("AADC")*, 525 U.S. 471 (1999). That decision controls here and precludes relief.

Petitioner strains to defend the district court's merits ruling that a longstanding portion of the INA is unconstitutional. He contends that the statute authorizing the foreign-policy charge—8 U.S.C. §1182(a)(3)(C)(iii)—is subject to vagueness review because it made his speech "unlawful." It does not. By its terms, the statute only delegates authority to the Secretary of State. Regardless, the district court's ruling is wrong even under a vagueness analysis. At bottom, Petitioner's objection is that the statute's terms are broad, but that does not render a statute unconstitutionally vague, and Petitioner all but ignores the statutory terms that substantially confine the reach of the statute—as even the district court acknowledged. At a minimum, Petitioner cannot succeed on his *as-applied* challenge when the Secretary's stated interest in deterring anti-Semitic conduct plainly constitutes a compelling "United States foreign policy interest."

Finally, Petitioner's arguments for release persist in his distorted reading of Supreme Court and Third Circuit precedent, both of which require a finding of likelihood of success on the merits—a determination the district court repeatedly declined to make.

## ARGUMENT

## I.  The District Court Exceeded its Habeas Authority

The district court exceeded its habeas authority twice over—it awarded relief without acquiring jurisdiction over the habeas petition, and the relief it entered went far beyond the bounds of habeas.

### A.  The District Court Lacked Habeas Jurisdiction

Habeas jurisdiction lies in the district in which "the person who has the immediate custody of the party detained" is located and the petitioner is confined. OB.17-18 (quoting *Rumsfeld v. Padilla*, 542 U.S. 434, 435 (2004)).  Under that rule, the district court lacked habeas jurisdiction because his petition was not filed in his district of confinement and did not name his immediate custodian.  OB.17-18.

1.  Petitioner concedes that he never filed his petition in the district of confinement.  Instead, he maintains that 28 U.S.C. §1631 cures that jurisdictional failing because his petition "could have been brought" in New Jersey when it was filed in New York.  AB.18.  That fundamentally misunderstands the purpose of §1631, which is to correct mistakes where the petitioner would otherwise have no remedy available, *see* S. Rep. No. 275, 97th Cong., 1st Sess. 11 (1981)—not to confer substantive authority otherwise lacking.  OB.22-23.  That is why the normal course in cases like this is to dismiss the case without prejudice to be refiled in the proper district, *see* OB.23 (collecting cases), not to use a generic transfer statute to override bedrock principles of habeas jurisdiction.  Here, neither the original nor amended petitions were filed in New

Jersey; therefore, the lower court lacked jurisdiction. *See* OB.22 (citing *Monteiro v. Att'y Gen.*, 261 F. App'x 368, 369 (3d Cir. 2008); and *Pub. Int. Rsch. Grp. of N.J., Inc. v. Magnesium Elektron, Inc.*, 123 F.3d 111, 119 (3d Cir. 1997)). And because the district court never acquired habeas jurisdiction, the rule of *Ex Parte Endo*, 323 U.S. 283 (1944), has no application. OB.19-20.

Section 1631 is inapplicable for another reason: habeas proceedings are not "civil actions" under that law. OB.23-24. Although "habeas corpus is technically 'civil,' it is not automatically subject to all the rules governing ordinary civil actions," *Schlanger v. Seamans*, 401 U.S. 487, 490 n.4 (1971), and the Supreme Court has repeatedly refused to construe "civil action" as encompassing habeas proceedings. *See* OB.24 (citing cases). Petitioner says "[t]his Court has 'repeatedly recognized that Section 1631 applies to habeas petitions," AB.19 (quoting JA.61), but the only decision of this Court he cites references §1631 only in dicta. *See Robinson v. Johnson*, 313 F.3d 128, 139-40 (3d Cir. 2002).

Ultimately, Petitioner insists that §1631 must apply to habeas because otherwise petitioners "lose the ability to pursue [their] cases because they filed in the wrong court." AB.20. That attacks a straw man: The Government agrees that Petitioner could have filed his habeas petition in the Eastern District of Louisiana. The only dispute is *where* Petitioner must file, not *whether* he can. Petitioner's putative concerns about his claims evading review thus ring hollow: his ability to *forum shop*, not obtain juridical review, is what is squarely at issue here.

2.    Petitioner also failed to satisfy the immediate-custodian rule.  Petitioner says that he "amended his petition to name the EDC warden" and that the amendment "relates back" under Rule 15.  AB.21.  But the facts show otherwise:   (1) When Petitioner filed his original petition in New York, he was in New Jersey; (2) when he filed his amended petition in New York, he was in Louisiana; and (3) when he filed his second amended petition in New Jersey and added the warden of the Elizabeth Detention Center (per the district court's order (*see* ECF 153 n.32)), he continued to be in Louisiana.  Despite three chances to name his actual custodian, Petitioner failed—or refused—to do so each time.  Those deficiencies are fatal under the immediate-custodian rule.

Petitioner also cannot invoke the "unknown custodian" exception, *see* OB.20-21 & n.3—an exception Petitioner concedes the Supreme Court has never applied, *see* AB.23.  Petitioner says he satisfies that exception because the Government allegedly "affirmatively and persistently led [his counsel] to believe he was in Manhattan" when the habeas petition was filed.  AB.22.  That accusation is based on two searches in ICE's Online Detainee Locator System *conducted by Petitioner's counsel*, coupled with a single comment from a DHS officer during Petitioner's arrest.  JA.541.  That paltry evidence hardly establishes that the Government misled Petitioner's counsel.  Indeed, the Southern District of New York rejected Petitioner's accusations of wrongdoing.  JA.556–57.

Moreover, the exception applies only when "a prisoner is being held in an undisclosed location by an unknown custodian," such that it is "impossible to apply" the normal habeas requirements. OB.20 (quoting *Padilla*, 542 U.S. at 450 n.18). That is not the case here, where Petitioner was given a Notice to Appear that identified Jena, Louisiana as the place of his detention and his counsel was then notified of his location shortly thereafter. *See* OB.20; JA.532, 543-44.[1] Requiring Petitioner to wait a few hours until he has arrived at his place of detention before filing a habeas petition hardly permits the Executive to "switch the Constitution on or off at will." AB.25. A contrary rule would only enable forum shopping (as occurred here). And Petitioner's projection AB.25 n.13) that the Government engaged in forum-shopping is belied by uncontroverted evidence: the decision to transfer Petitioner to Louisiana was made during his initial processing and was based solely on operational considerations (principally lack of long-term detention capacity in the New York area). JA.527-29.

In all events, once Petitioner's location became known, the district court was required to transfer the petition to the district of confinement. OB.21. The district court erred in refusing to do so.

---

[1] Petitioner's location was not unknown for twenty-nine hours. AB.24 n.12. On March 8, at about 8:30 p.m., Petitioner was arrested, a fact known to counsel. JA.541. Less than six hours later, on March 9, at 1:35 a.m., counsel knew that Petitioner was in custody in New York, JA.541; seven or so hours after that, at about 9 a.m., counsel knew that Petitioner's location was New Jersey, JA.542; and about five hours later, at 1:47 p.m., ICE told counsel that Petitioner was being transferred to Louisiana, JA.543-44.

### B. The District Court Ordered Relief Not Available in Habeas

The district court's June 11 and July 17 Orders are independently unlawful because they ordered relief not available in habeas—enjoining Petitioner's removal and exercising direct-appellate-review-like control over the IJ. OB.26-27. Petitioner argues that the writ can be *invoked* by an alien in custody, AB.26, but he cites no authority that a habeas court has authority to enjoin *removal*, much less direct the operations of an IJ. Indeed, *DHS v. Thuraissigiam*, 591 U.S. 103, 118-20 (2020), forecloses such relief. OB.26. Nor can Petitioner bypass the limits of habeas by filing a "hybrid" habeas and civil action, AB.26-27, as *Trump v. J.G.G.*, 604 U.S. 670, 672 (2025), makes clear.

## II. The INA Divested the District Court of Jurisdiction

Habeas jurisdiction aside, several provisions of the INA divested the district court of jurisdiction to adjudicate Petitioner's claims. OB.27-40. Petitioner's contrary arguments lack merit.

### A. 8 U.S.C. §1252(g)

Section 1252(g) prohibits district courts, including when sitting in habeas, from "hear[ing] any cause or claim … arising from the decision or action by the Attorney General to commence proceedings, [or] adjudicate cases[.]" 8 U.S.C. §1252(g); *see* OB.27-32. Here, Petitioner challenges the Government's efforts to detain and remove him—which falls squarely within §1252(g)'s bar.

1. Like the district court, Petitioner argues that §1252(g) does not apply because he is challenging "the *Secretary of State's* determination," not an action by the

DHS Secretary to commence proceedings. AB.30. That makes no sense: The fact that the [DHS Secretary] commenced removal proceedings *because* of the Secretary of State's determination does not make this any less of a removal proceeding commenced by the DHS Secretary.

The sole purpose of the Secretary's determination is to render an alien removable—it is inextricably intertwined with the commencement of removal proceedings. OB.29. It does not matter that the Secretary's determination "does not *require* the Attorney General to take any action." AB.30.[2] It is still part-and-parcel of the commencement of removal proceedings, which is its entire purpose. 8 U.S.C. § 1182(a)(3)(C)(iii). Petitioners cannot evade §1252(g)'s bar by artful pleading, *see* OB.30 (citing *Tazu v. Att'y Gen.*, 975 F.3d 292, 298 (3d Cir. 2020)).[3]

More fundamentally, Petitioner's efforts to quarantine the Secretary's foreign-policy determination from the commencement of removal proceedings is belied by the district court's injunction, which *does not enjoin* the Secretary's foreign-policy determination but prohibits the Government from "remov[ing]" and "detaining"

---

[2] *Tazu* did not hold that "claims 'challen[ging] Government action taken *before* the Attorney General tried to pursue removal'" are not covered by §1252(g). AB.30 (quoting *Tazu*, 975 F.3d at 298)). In the quoted passage, the Court only observed that it was not dealing with that fact pattern.

[3] Courts have repeatedly recognized that §1252(g) extends to decisions made by the State Department. *See, e.g., Taal v. Trump*, 2025 WL 926207, at *2-3 (N.D.N.Y. Mar. 27, 2025); *Alghadbawi v. Napolitano*, 2011 WL 4390084, at *3 (S.D. Ind. Sept. 19, 2011); *Ruston v. U.S. Dep't of State*, 29 F. Supp. 2d 518, 522 (E.D. Ark. 1998).

Petitioner entirely. JA.19-20. Petitioner's response that §1252(g) does not extend to "remedies" misses the point. AB.30-31. The remedies Petitioner sought demonstrates that his "cause or claim" is really a challenge to his detention and removal proceedings, not just the Secretary's determination. OB.29. That was made perfectly clear by the district court's July 17 Order, which directly enjoined *the IJ—directly and literally* interfering with an "action by the Attorney General to … adjudicate [a] case[]," 8 U.S.C. §1252(g).

2. Petitioner separately tries to evade §1252(g) by framing his challenge as against "the 'very authority' to seek removal," AB.31—a ground not embraced by the district court. And for good reason. *Tazu* held only that §1252(g) does not apply when an alien is challenging the Attorney General's *statutory* authority to take action: "[W]hen the Act deprives the Attorney General of the discretion to act, a challenge to that lack of statutory authority is not barred" by §1252(g). 975 F.3d at 298; *see also Garcia v. Att'y Gen.*, 553 F.3d 724, 729 (3d Cir. 2009) (same). By contrast, Petitioner has not challenged the Attorney General's statutory authority to remove him, but (like Tazu) asserts *constitutional* objections to the Attorney General's decisions and actions. Section 1252(g) bars such claims. *See Tazu*, 975 F.3d at 297-298 (§1252(g) applies where the petitioner styled "his constitutional and statutory objections as challenging not the Executive's discretion, but its authority to execute his removal order"); *Ragbir v. Homan*, 923 F.3d 53, 64 (2d Cir. 2019), *cert. granted, judgment vacated sub nom. Pham v. Ragbir*, 141 S.Ct. 227 (2020) (holding that First Amendment retaliation challenge to removal fell within

§1252(g)). A contrary rule would only allow Petitioner to "bypass [§]1252(g) through mere styling of [his] claims." *Ragbir*, 923 F.3d at 64.

The Supreme Court's decision in *AADC*, confirms that Petitioner's challenge is barred by §1252(g). OB.30-31. Petitioner retorts that *AADC* does not control because he is not in this country unlawfully. AB.30. Not so: several of the petitioners in *AADC* were lawful permanent residents, too, and yet §1252(g) still applied. 525 U.S. at 474. In any event, Petitioner was previously deemed removable on both charges, *see* JA.1854-59, and the IJ has now, once again, deemed him removable on the document-fraud charge, *see* ECF 378.

Petitioner insists, however, that he falls into the "outrageous conduct" exception alluded to in *AADC*. AB.33. But he offers no argument for how the alleged retaliation against him is any more "outrageous" than the Government's admittedly-speech-motivated actions in *AADC*, which the Court held to be non-actionable. 525 U.S. at 487, 488 n.10. In any event, there is nothing "outrageous" about removing an individual who only secured lawful status in the United States through fraud.

3.     Finally, Petitioner argues that even if §1252(g) forecloses his challenge to removal, it still covers detention. AB.33-34. But that construction would render §1252(g)'s explicit language precluding review under "any … habeas corpus provision" meaningless. By adding the *habeas-stripping* provisions to multiple subsections within §1252, Congress recognized that detention-based challenges would fall within its scope. *See Tazu*, 975 F.3d at 298-99. Indeed, because "[d]etention during removal proceedings

is a constitutionally permissible part of that process," they frequently go hand-in-hand. *Demore v. Kim*, 538 U.S. 510, 531 (2003) (citation omitted). And while Petitioner says his "detention claim is collateral to the removal process because it can 'be resolved without affecting pending removal proceedings," AB.34, he attacks both on the *very same* substantive grounds. Those identical, parallel challenges are not "collateral" to each other but rather inextricably intertwined. *See Ozturk*, 2025 WL 2679904, at *2 (explaining that "decision to detain is a specification of the decision to commence proceedings" (quotation marks omitted)).

Kong v. United States, 62 F.4th 608, 614-16 (1st Cir. 2023), does not help Petitioner. There, the First Circuit explained that Kong's claims did "not arise from the discretionary decision to execute removal but instead [arose] from the government's alleged violations of law in arresting Kong without a relevant warrant and in failing to abide by its own regulations." *Id.* at 618. Based on that framing, the First Circuit held that §1252(g) did not apply to Kong's FTCA claim *for damages*. *Id.* at 617-18. Even so, the Court acknowledged that §1252(g) *does extend* to the decision to detain an alien pending execution of a removal order. *Id.* at 618.

## B.    8 U.S.C. §1252(b)(9)

The INA—through 8 U.S.C. §1252(a)(5) and (b)(9)—channels "all questions of law and fact … arising from any action taken or proceeding brought to remove an alien" through a PFR filed with the appropriate court of appeals. 8 U.S.C. §1252(b)(9). "Taken together, §1252(a)(5) and §1252(b)(9) mean that *any* issue—whether legal or

factual—arising from *any* removal-related activity can be reviewed *only* through the [PFR] process." *J.E.F.M. v. Lynch*, 837 F.3d 1026, 1031 (9th Cir. 2016) (emphasis in original). Those provisions bar Petitioner's claims here. OB.32-33.

1. Petitioner first argues that the jurisdictional limits imposed by §1252(a)(5) and (b)(9) apply only when there is a final order of removal. AB.34-36 & n.17. Not so, as *J.E.F.M.* (and other cases) make clear. *See also Ozturk*, 2025 WL 2679904, at *5 n.7.

Petitioner insists that *Chehazeh v. Att'y Gen.*, 666 F.3d 118 (3d Cir. 2012), is still good law, but he has no meaningful response to this Court's subsequent decision in *E.O.H.C. v. DHS*, which applied §1252(b)(9) prior to a final order of removal. 950 F.3d 177, 183, 187-88 (3d Cir. 2020) (concluding that §1259(b)(9) bars claims for which meaningful review can be obtained "alongside review of a final order of removal" and appellants thus "must await a final order of removal"); *see* OB.35. Nor does he successfully distinguish *Jennings v. Rodriguez*, 583 U.S. 281 (2018). *See* OB.35. He says the plurality "held that section 1252(b)(9) did not channel unlawful detention claims because they did not 'arise from' removal proceedings." AB.36. But if §1252(b)(9) did not apply *at all* prior to a final order, there would have been no need for the plurality (or Justice Thomas and Justice Gorsuch) to debate the scope of §1252(b)(9). And the fact that "three Justices in dissent suggested that [§1252(b)(9)] cannot apply pre-final order," AB.36, helps the Government—it shows that a majority of the Court was aware of Petitioner's reading of §1252(b)(9) and rejected it in favor of their own differing constructions.

Petitioner's reading would also produce nonsensical results. For example, a district court could suddenly lose jurisdiction midway through a case once a final order of removal issues. OB.34. This is exactly the sort of "fragmented" proceedings that §1252(a)(5) and (b)(9) were designed to avoid. *See Aguilar v. U.S. ICE Div. of DHS*, 510 F.3d 1, 13-14 (1st Cir. 2007); OB.34. Petitioner offers no response. AB.35-36.

2. Alternatively, Petitioner argues that his claims do not fall within §1252(b)(9) because they do not "arise from any action taken or proceedings brought to remove" him. AB.36-37. That argument rests on the same flawed premise that the Secretary's determination is wholly distinct from detention and removal proceedings. *Supra*, p.8-9. Moreover, even if Petitioner only challenged the Secretary's determination, §1252(b)(9) *would still apply* because the Secretary's determination is an "action taken … to remove" him. As Petitioner concedes, the Secretary's foreign-policy determination "renders [him] subject to removal," AB.38, and his claim "arises from" that action.

Petitioner says, however, that claims based on "actions that took place *before* removal is sought" must fall outside §1252(b)(9). To be sure, §1252(b)(9) would not cover acts (prior or otherwise) that are unrelated to the Government's efforts to remove an alien, which was the situation in the cases Petitioner cites (AB.38)—both of which addressed §1252(g), not (b)(9). *See Wong v. United States*, 373 F.3d 952, 964 (9th Cir. 2004); *Humphries v. Various Fed. USINS Emps.*, 164 F.3d 936, 944 (5th Cir. 1999). That concern, however, has no application here, where the Secretary's foreign-policy

determination is directly tied to removal, such that the latter "arises from" the former under *Jennings*.

Petitioner's fantastical hypothetical does not undermine this straightforward application of the statute. AB.37. That same objection could be made against *every* action that precedes the literal removal of an alien, but this Court has already held that §1252(b)(9) bars challenges to actions—such as detention—that precede the actual act of removal. *See Tazu*, 975 F.3d at 299 (holding that "re-detention *was* part of [removal]"). This case is no different.

3.       Switching gears, Petitioner argues that he "raises a quintessential 'now-or-never' claim." AB.39. As the Government explained, this Court in *Massieu v. Reno*, 91 F.3d 416, 417, 421-23 (3d Cir. 1996), already held that challenges to removal under the Secretary's foreign-policy determination are subject to §1252(b)(9). OB.36. Petitioner says *Massieu* does not control because it did not involve "the infringement of free exercise interests" and the BIA later concluded that "an IJ cannot look behind the Secretary's determination." AB.41. But there is no special rule for First Amendment claims under §1252(b)(9), which applies to application of "constitutional" provisions, and the fact that the IJ is not permitted to question the factual basis for the Secretary of State's foreign-policy determination as to a particular alien, *see In re Ruiz-Massieu*, 22 I&N Dec. 833, 842-43 (BIA 1999), does not mean the IJ is unable to develop a record for a later constitutional claim in federal court—as *AADC* directly held. 525 U.S. at 484-85, 491; *see also* OB.36-37; ECF 185. Indeed, Petitioner admits that "IJs

are 'empowered to develop'" a factual record. AB.40; *see also Aguilar*, 510 F.3d at 15. And to the extent additional fact-finding is needed, the court of appeals can order it in the district court. *See* OB.37 n.6 (citing 28 U.S.C. §2347); *AADC*, 525 U.S. at 496-97 & n.3 (Ginsburg, J. concurring).

4. Petitioner also argues that "at the very least" §1252(b)(9) does not apply to his "unlawful detention claims." AB.41-42. That contention runs headlong into *Tazu*, where this Court held that §1252(b)(9) required that any challenge to the government's decision to "re-detain" plaintiff as part of removal was subject to §1252(b)(9). 975 F.3d at 299. The same logic applies here—the Government's decision to detain Petitioner was part-and-parcel of its decision to remove him. As in *Tazu*, "the legal questions [Petitioner] raises" against his detention "are bound up with (and thus 'aris[e] from') an 'action taken' to remove him." 975 F.3d at 299; *see also Jennings*, 583 U.S. at 294 (holding that §1252(b)(9) does not apply in part because the aliens were "not challenging the decision to detain them in the first place"); *id.* at 318 (Thomas, J., concurring) ("detention *is* an 'action taken … to remove' an alien"); *Ozturk*, 2025 WL 2679904, at *3-5 (§1252(b)(9) applies where "the government has no reason aside from its decision to commence removal proceedings for detaining the petitioners").[4]

---

[4] The fact that the *Jennings* plurality did not believe claims challenging prolonged detention are subject to §1252(b)(9), does not mean the initial *decision* to detain is not either.

5.      Finally, Petitioner argues that accepting the Government's interpretations of §1252(g) and (b)(9) would raise "concerns" under the Suspension Clause and the First Amendment.  Those arguments are both forfeited, *Greene v. U.S.*, 13 F.3d 577, 586 (2d Cir. 1994), and meritless.  As to the Suspension Clause, if Petitioner is using this habeas action to challenge his detention *only* and seeking only release from custody, the REAL ID Act amendments to the INA satisfy Suspension Clause concerns.  *See Luna v. Holder*, 637 F.3d 85, 95 (2d Cir. 2011).  Indeed, as the Government represented to the district court, Petitioner is permitted to challenge his detention and ask an IJ whether he is properly subject to his foreign-policy charge.  *See* ECF 156 at 10 (citing 8 C.F.R. §1003.19(h)(2)(ii)); *but see* AB.43 n.18 (misrepresenting the Government' position).  To the extent Petitioner is trying to invoke Suspension Clause concerns for relief other than release from custody, the Supreme Court has foreclosed such use of the Clause. *See Thuraissigiam*, 591 U.S. at 119.

As to the First Amendment, Petitioner cites no authority holding that channeling such claims through the petition-for-review process would be unconstitutional.  AB.44. He cites Justice Ginsburg's concurrence in *AADC*—which the majority tellingly refused to adopt.  *See* 525 U.S. at 488 n.10.  Besides, the petition-for-review process is fully capable of providing a forum for adjudicating Petitioner's First Amendment claim. *Supra*, p.14.

## III.    The Court Erred in Granting a Preliminary Injunction

Jurisdictional issues aside, the district court erred in granting a preliminary injunction.  Plaintiff has not shown likelihood of success on any claim, and he failed to establish irreparable harm.  OB.40-52.

### A.    Petitioner is not Likely to Succeed on the Merits

The district court's preliminary injunction rests solely on its determination that Petitioner is likely to succeed on his claim that the statute on which the Secretary of State's foreign-policy charge is based—8 U.S.C. §1182(a)(3)(C)(iii)—is unconstitutionally vague.  Not so.

### 1.    The Void-for-Vagueness Doctrine does not Apply

The void-for-vagueness doctrine does not apply to 8 U.S.C. §1182(a)(3)(C)(iii) because the statute does not regulate primary conduct; it delegates authority to the Secretary of State.  OB.40-43.[5]  Petitioner does not dispute this key limitation on the vagueness doctrine, nor does he cite a single case holding that it does not apply to immigration-related statutes.  AB.47-48.

Instead, Petitioner insists that the statute imposes a "penalty" for speech.  AB.49. It does no such thing.  The statute delegates authority to the Secretary of State to make a determination that renders an alien removable.  *See* 8 U.S.C. §1182(a)(3)(C)(iii); *see also*

---

[5] The Government has not forfeited this argument.  The Government resisted Petitioner's vagueness claim below, and "parties are not limited" on appeal to "the precise arguments they made below."  *Lebron v. Nat'l Railroad Passenger Corp.*, 513 U.S. 374, 379 (1995).

*Harisiades v. Shaughnessy,* 342 U.S. 580, 594 (1952) ("'[N]or is the deportation a punishment; it is simply a refusal by the government to harbor persons whom it does not want.'") (cleaned up). If the Secretary does not exercise that discretion, the alien is not removable. *See* 8 U.S.C. §1182(a)(3)(C)(iii).

Indeed, Petitioner acknowledges that it is the Secretary's determination, not the statute, that made him removable. AB.49. That is unlike the case Petitioner cites—*Sessions v. Dimaya*, 584 U.S. 148 (2018)—which addressed a statute that *by its own force* rendered deportable an alien who is "convicted of an 'aggravated felony.'" *Id.* at 153. That statute fits squarely within the category of cases subject to the vagueness doctrine. *Johnson v. United States*, 576 U.S. 591, 596 (2015).

Ultimately, Petitioner's challenge to §1182(a)(3)(C)(iii) is not a vagueness challenge but instead a challenge to the breadth of its the delegation, OB.42-43. And it is an unavailing one because the statute easily satisfies the non-delegation doctrine (which Petitioner does not contest). AB.46-49.

## 2. The Statute is not Unconstitutionally Vague

Even if the vagueness doctrine applied, the district court erred in holding the statute unconstitutional as applied to Petitioner. OB.43-50.

a. Petitioner's vagueness claim fails out of the gate because it is not truly a vagueness claim but rather a miscast *ultra vires* claim that the Secretary exceeded his statutory authority. OB.44. Petitioner objects that the vagueness doctrine prohibits "the unforeseeable and retroactive enlargement" of a statute's scope, AB.52 n.21, but

the district court's decision proves this theory of a vagueness challenge has no application here. The court acknowledged that §1182(a)(3)(C)(iii) can be read as the Government urges, JA.289, and it conceded that an interest in "fighting the social and religious scourge of global anti-Semitism" fits comfortably within the statute so read, JA.289, 291. That alone should have precluded the court's vagueness holding, and it refutes the notion that the Government's interpretation represents a dramatic and "unforeseeable" expansion of the statute. Nor does Petitioner cite any contrary prior construction, rendering his "retroactive" contention untenable (and unexplained).

The cases Petitioner cites undermine his argument. In *Bouie v. City of Columbia*, 378 U.S. 347 (1964), the Supreme Court vacated convictions under a criminal trespass statute. The statute applied only to entry onto property after notice that entry was prohibited but was interpreted by the state court to also cover a person remaining on property after being told to leave. *Id.* at 348, 355. The Court held that "a deprivation of the right of fair warning can result … from an unforeseeable and retroactive *judicial* expansion of *narrow and precise* statutory language," as such "narrow and precise" language "giv[es] [the defendant] no reason even to suspect that conduct *clearly outside the scope of the statute as written* will be retroactively brought within it by an act of judicial construction." *Id.* at 352; *see also id.* at 354. The same logic underlies *Rabe v. Washington*, 405 U.S. 313 (1972), which vacated a conviction "under a statute with a meaning quite different from the one he was charged with violating." *Id.* at 315-16.

This action is nothing like those cases. Section 1182(a)(3)(C)(iii) does not involve "narrow and precise" language that would give Petitioner "no reason even to suspect" that his activities would be brought within its sweep. *Bouie*, 378 U.S. at 352. Again, the district court acknowledged that the statute can be read to encompass the precise foreign policy interest that Petitioner's activities implicate. JA.289, 291.

b.    The district court's theory of vagueness also fails on its own terms. The court interpreted §1182(a)(3)(C)(iii) to apply *only* to "the United States' relations with other countries." JA.234; *see* OB.44-45. But that interpretation focuses myopically on the words "foreign policy," rather than the full phrase "United States foreign policy interest"—which is not limited to nation-on-nation relations but covers issues of a foreign policy nature in which the United States is concerned. OB.44. Petitioner has little to say, except to object that the Government "do[es] not explain why the word 'interest' compels" the Government's reading over the district court's interpretation. AB.52. In fact, the Government thoroughly explained why the district court's cramped fixation on the words "foreign policy"—rather than the statutory phrase "United States foreign policy interest"—distorts the statute's meaning. OB.44-45. Although Petitioner appears to argue that the word "interest" has no independent meaning, that contradicts the "cardinal rule of statutory interpretation that courts should avoid interpreting a statute in ways that would render certain language superfluous." *United States v. Williams*, 917 F.3d 195, 202 (3d Cir. 2019). Petitioner also faults the Government for not "squar[ing] [its] interpretation with [the statute's] legislative or

enforcement history," AB.52, but that is not how statutory interpretation works. But such history is irrelevant where (as here) the text is plain. *Azar v. Allina Health Servs.*, 587 U.S. 566, 579 (2019). In any event, Petitioner cites nothing for the proposition that "legislative or enforcement history" can render a statute's *text* unconstitutionally vague.

The district court's interpretation fails for another reason: the Secretary of State *did* determine that Petitioner's conduct affected "the United States' relations with other countries." OB.45. Petitioner parrots the district court's view that the Secretary's determination "described only activities undertaken by the Petitioner in the United States," not abroad. AB.51 (quoting JA.240). As explained, that critique is based on the false premise that domestic activities can never affect the nations' relations with other countries. OB.45-46. That is a premise whose falsity is well-understood by Petitioner himself, who justified the morality of Hamas's October 7 domestic attacks wholly within Israel based on his (and Hamas's) desire to forestall recognition of Israel by Saudi Arabia—a point that Petitioner strikingly ignores entirely. OB.46.

Petitioner repeats the district court's criticism that the Secretary's determination does not reference "any country other than America," but the Government has already explained why that makes no difference. OB.46. Regardless, the United States' "relations" with Israel obviously would be affected if the United States condoned violent anti-Semitic actions. OB.45. Petitioner criticizes this is a "[p]ost-hoc" justification, but the First Amendment imposes no such APA-like requirements of the sort that Petitioner conjures here—a point powerfully demonstrated by Petitioner's

demonstrated inability to provide even a single citation for that putative constitutional prohibition on post-hoc fleshing out of rationales. AB.55.

c. Properly interpreted, §1182(a)(3)(C)(iii) easily survives a vagueness challenge. The phrase "United States foreign policy interest" encompasses all issues of concern to the United States that are of a foreign policy nature, AB.44, and the district court conceded that the foreign policy interest stated in the Secretary's determination—combatting anti-Semitism—fits within that interpretation. JA.290, 291. Petitioner's argument that §1182(a)(3)(C)(iii) is unconstitutionally vague, even as properly interpreted, rests on the same flawed premise as the district court's analysis: that a law is unconstitutionally vague if it is broad. AB.52-53. That is wrong—that a "law is broad does not mean that it is ambiguous, much less unconstitutionally vague." OB.47 (quoting *Calzone v. Summers*, 942 F.3d 415, 426 (8th Cir. 2019)). So it makes no difference that "[t]here is no one-stop shop … to see all of America's foreign policy interests put down on paper," AB.52 (quoting JA.295), as due process does not require "[i]mpossible standards of specificity," *Jordan v. De George*, 341 U.S. 223, 231 (1951).

More fundamentally, Petitioner's critique ignores the *other* language in §1182(a)(3)(C)(iii) that clarifies its scope. OB.47-48. The statute applies only when an alien's activities "compromise"—*i.e.*, "serious[ly] impair[]," JA.235—a "compelling"—*i.e.*, "especially important," JA.233-36—United States foreign policy interest. OB.48. Petitioner all but ignores this language. He merely asserts, without argument, that these words do not "provide notice or cabin enforcement," AB.53 n.22, but that is belied by

the district court's acknowledgment that these statutory terms eliminate fully two-thirds of the example foreign policy interests it had listed. OB.48. Otherwise, Petitioner objects that §1182(a)(3)(C)(iii) "does not include a mens rea requirement," AB.53 n.22, but the vagueness doctrine does not mandate a scienter requirement, especially not for civil statutes. *Planned Parenthood of Ind. & Ky., Inc. v. Marion Cnty. Pros.*, 7 F.4th 594, 601 (7th Cir. 2021).

Regardless, Petitioner's and the district court's arguments about the outer bounds of §1182(a)(3)(C)(iii) may be relevant to a *facial* challenge, but not an *as-applied* challenge. OB.49. Petitioner tries to elide the limitations on an as-applied challenge by invoking the canon of constitutional avoidance. AB.54 (quoting *Clark v. Martinez*, 543 U.S. 371, 380-81 (2005)). But that canon is not an "end run around black-letter constitutional doctrine governing facial and as-applied constitutional challenges." *Martinez*, 543 U.S. at 381. Petitioner is not asking that §1182(a)(3)(C)(iii) be interpreted to avoid constitutional concerns; he argues that it is unconstitutionally vague, as applied, under *any* interpretation. To prevail on that claim, Petitioner must show that §1182(a)(3)(C)(iii) "is vague as applied to the particular facts at issue" here. *Holder v. Humanitarian L. Project*, 561 U.S. 1, 18 (2010).

He cannot meet that standard. As the district court acknowledged, "effort to take on a social or religious issue, like combatting global anti-Semitism" fall comfortably within the reading of the statute the Government advocates. AB.49 (quoting JA.291). No more is needed. Petitioner appears to tacitly concede that "combatting anti-

Semitism is a compelling 'foreign policy interest,'" but says there are "no public criteria for assessing when or how" an interest in combatting global anti-Semitism "might be 'compromised' by protected speech." AB.55 (citing JA.283, 290). Petitioner does not dispute, however, that the meaning of "compromised"—as interpreted by the district court—is sufficiently clear and he identifies no authority requiring some other "public criteria," thereby conceding the issue.

### B.    Petitioner's Alternative Grounds for Affirmance Fail

Unable to prevail on his vagueness claim, Petitioner asks the Court to affirm the preliminary injunction on two grounds the district court never reached—a First Amendment retaliation claim and a substantive due process claim. The Court should decline that invitation. This Court is a "court of review, not first view," and "[a]bsent an extraordinary circumstance" it should not "decide an issue in the first instance." *Mullins v. Consol Energy, Inc. Long Term Disability Plan*, 110 F.4th 180, 192 (3d Cir. 2024) (citation omitted). That rule applies with even greater force when reviewing a preliminary injunction. *Sherley v. Sebelius*, 644 F.3d 388, 398 (D.C. Cir. 2011) (no "precedent for upholding a preliminary injunction based upon a legal theory not embraced by the district court"). In any event, neither alternative theory has merit.

### 1.    First Amendment Retaliation

Petitioner's retaliation claim fails right out of the gate because it is premised on an incorrect legal framework. Although Petitioner rests his argument on the two-step framework from *Mount Healthy City School District Board of Education v. Doyle*, 429 U.S. 274

(1997), *see* AB.57-65, that framework does not apply to aliens, like Petitioner, who are raising First Amendment challenges to their removal. In *AADC*, the Supreme Court considered a challenge by several aliens—including lawful permanent residents—seeking to prevent their removal because the Government had targeted them for removal based on their First Amendment-protected activity—*i.e.*, association with certain organizations. *Id.* at 473-74, 487-92. But even though the Government there *admitted* that it was targeting the aliens for removal because of their First Amendment-protected activity, the Court held that "an alien unlawfully in this country has no constitutional right to assert selective enforcement as a defense against his deportation." *Id.* at 488. "When an alien's continuing presence in this country is in violation of the immigration laws, the Government does not offend the Constitution by deporting him," even based on his First Amendment activity. *Id.* at 491-92.

*AADC* forecloses Petitioner's retaliation claim. Petitioner was charged as removable from the United States on the document fraud charge—which has nothing to do with any First Amendment activity—and was ordered removed by the IJ based on that charge. OB.9; JA.1854-59. As in *AADC*, "the Government does not offend the Constitution" by seeking to deport Petitioner on that charge, even if it is also seeking to "deport[] him for [an] additional reason" related to First Amendment activity. 525 U.S. at 491-92. To the extent Petitioner argues that *AADC*'s exception for "outrageous" conduct applies here, that argument is for review by the appropriate court

of appeals through a petition for review—not this collateral challenge. *See* 8 U.S.C. §1182(a)(5), (b)(9). It further fails as discussed above. *Supra,* p.8.

Petitioner argues that *AADC* does not apply because it involved aliens who are "unlawfully" in the United States. AB.50 (emphasis omitted). That makes no difference, particularly since *AADC* respondents included lawful permanent residents. 525 U.S. at 474. The point of *AADC* is that an alien with no right to remain in the United States may not obstruct his removal by challenging that removal, including on First Amendment grounds. Petitioner has been deemed removable on the document fraud charge and has no right to remain in the United States—just like the aliens in *AADC*. It makes no difference that Petitioner did not style his First Amendment retaliation claims as a "selective enforcement" claim; however styled, Petitioner seeks to achieve exactly what *AADC* foreclosed. *Cf.* AB.50.

### 2. Substantive Due Process

Petitioner also asserts a substantive due process claim but only as an alternative ground to affirm the injunction as to his detention—*not* removal. AB.65-67. This claim likewise has no merit. "Detention during deportation proceedings [is] a constitutionally valid aspect of the deportation process." *Demore*, 538 U.S. at 522. Accordingly, aliens may be detained during the pendency of their removal proceedings even without an individualized determination as to flight risk or dangerousness. *See, e.g., Carlson v. Landon*, 342 U.S. 524, 528-34, 538 (1952); *Wong Wing v. United States*, 163 U.S. 228,

235 (1896).  That is all that happened here:  the Government invoked its statutory authority to detain Petitioner pending removal proceedings.  *See* 8 U.S.C. §1226.

Petitioner claims a "substantive due process" right to be free from detention.  To start, this claim is just a repackaging of Petitioner's First Amendment retaliation claim, but substantive due process has no role when the claim arises under a specific constitutional provision.  *Graham v. Connor*, 490 U.S. 386, 397 (1989).  Even if it were otherwise, the claim still fails.  The Government charged Petitioner as removable as an alien whose presence or activities "would compromise a compelling United States foreign policy interest," 8 U.S.C. §1182(a)(3)(C)(iii), and for document fraud.  OB.6-7, 8-9.  There is no constitutional right for a person charged as (and now determined to be) removable on such grounds to be released into the United States—much less a right that is "objectively, 'deeply rooted in this Nation's history and tradition.'"  *Washington v. Glucksberg*, 521 U.S. 702, 720-21 (1997).  To the contrary, the constitutionality of civil detention in service of removal proceedings is well-established.  *See Demore*, 538 U.S. at 517-18, 531; *Johnson v. Guzman Chavez*, 594 U.S. 523, 528-29 (2021).

Rather than dispute this point, Petitioner objects that his detention is unlawful because "it was retaliatory and served no constitutionally valid purpose."  AB.65.  That is wrong.  The Government has a legitimate interest in detaining an alien who threatens to compromise the United States' foreign policy interests or that secured lawful status through document fraud.  That is sufficient to justify his detention, whether or not he is a flight risk or a danger to the community.  *Cf.* AB.66.

None of the cases Petitioner cites support his argument. *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001), concerned *post-removal* detention and the risk of indefinite detention. The statute under which Petitioner was detained—8 U.S.C. § 1226— authorizes detention only during removal proceeding, a much shorter and well-defined period. Further, *Demore* and *German Santos* note only that due process concerns *may* arise *after* a prolonged detention period. *Demore*, 538 U.S. at 532; *German Santos v. Warden Pike Cnty. Corr. Facility*, 965 F.3d 203, 213 (3d Cir. 2020). Petitioner is not arguing that the *duration* of his detention violated due process. AB.65-66. He instead contends that *any* pre-final-order detention of his person was categorically unconstitutional. The Supreme Court begs to differ. *See Demore*, 538 U.S. at 531; *German Santos*, 965 F.3d at 213-14.

## C. The District Court Erred in Finding Irreparable Harm

The district court also erred in finding that Petitioner would suffer irreparable harm absent an injunction. OB.51-52.

1. Petitioner argues that he suffered irreparable harm because it is presumed for violation of "First Amendment freedoms." AB.68. But the court below *did not hold* that Petitioner was likely to succeed on his First Amendment retaliation claim, so he cannot rely on a supposed violation of his "First Amendment freedoms" to establish irreparable harm. Petitioner says he still has suffered irreparable harm because his speech has been chilled by the Secretary's foreign-policy determination. AB.68 (citing JA.1474, 1478). That is implausible on its face: Petitioner has recently been engaged

in a dizzying media blitz and has one of the least chilled tongues in all of America. OB.52.

But even if that were true, Petitioner is subject to detention and removal based on the separate document fraud charge, and so any chilling effect cannot be attributed to the Secretary's determination. OB.51-52. Although Petitioner invokes the district court's flawed premise that the Government would not *detain* him based solely on the foreign-policy charge, AB.68, the district court never held that the Government would not *remove* him based on the document fraud charge and so the injunction could not remedy any chilling effect from that removal. OB.51-52. Petitioner does not attempt to square his assertion of a speech chill with his ongoing, prevalent, and public speech.

Petitioner objects that the document fraud charge is "dubious" and "has not been finally adjudicated." AB.69. Those characterizations are both irrelevant and wrong. In fact, on September 12, the IJ denied Petitioner's request for a Section 237(a)(1)(H) waiver and ordered that he be removed to Algeria or Syria. ECF 378 at 8. Although Petitioner hypothesizes that the document fraud charge might "ultimately be dismissed or enjoined," leaving only the foreign-policy charge, AB.69, such naked speculation is insufficient to establish irreparable harm. *See In re Revel AC, Inc.*, 802 F.3d 558, 571 (3d Cir. 2015).

2.     Petitioner falls back on the district court's conclusion that his detention and removal would irreparably harm his "reputation" and "career." AB.69-70. As the Government explained, any such harms flow from the Secretary of State's foreign-

policy determination, not from his detention or removal.  OB.51-52.  Petitioner says "both can be true," AB.70, but he cites no *evidence* that his detention or removal harmed his reputation or career.  Instead, he cites purported harms attributable to *the Government's speech* regarding his detention and removal proceedings, AB.70, which is also not harm that arises from the detention or removal proceedings themselves.

## IV.   The District Court Erred in Ordering Petitioner's Release

At a bare minimum, the district court erred in ordering that Petitioner be released from custody.

A.     The district court's release order is foreclosed by 8 U.S.C. §1226(e), which prohibits courts from setting aside a decision "regarding the detention or release of any alien … or denial of bond or parole."  OB.53-54.  Petitioner says that §1226(e) does not bar review of constitutional claims, AB.70, but the district court did not enforce any constitutional provision to order Petitioner's release.  It granted bail without finding any constitutional violation or even a *likely* constitutional violation as to the document-fraud charge.  OB.54; *see* JA.375 (reasoning only that "there is at least something to the underlying claim").

Petitioner says *Jennings* recognized that §1226(e) permits challenges to the "extent of the Government's detention authority."  AB.70.  But he is not asserting a "challenge[] to the statutory framework that permits" his detention, *Jennings*, 583 U.S. at 295, and so §1226(e) applies.  *See, e.g., Aguayo v. Martinez*, 2020 WL 2395638, at *5 (D. Colo. May 12, 2020) (applying §1226(e) to bar habeas claim for the same reason); *Hatami v. Chertoff*,

467 F. Supp.2d 637, 641 (E.D. Va. 2006) (same); *accord Borbot v. Warden, Hudson Co. Correctional Facility,* 906 F.3d 274, 279 (3d Cir. 2018) (*dicta* recognizing same point). Petitioner relies on *Lucas v. Hadden*, 790 F.2d 365 (3d Cir. 1986), and *Johnston v. Marsh,* 227 F.2d 528 (3d Cir. 1955). AB.71-72. Both pre-dated the 1996 enactment of §1226(e) and so have no relevance here. OB.53-54.

B.  Alternatively, Petitioner did not satisfy the requirements for release on bail. OB.54-57. To secure release, a detainee must show *both* a likelihood of success on the merits *and* extraordinary circumstances. OB.54-55 (citing *Winter v. NRDC*, 555 U.S. 7, 20 (2008), and *Landano v. Rafferty,* 970 F.2d 1230, 1239 (3d Cir. 1992)). The lower court erred in granting relief *without* finding likelihood of success.

Petitioner says that the standards for granting bail are not coterminous with those for obtaining a preliminary injunction. AB.72. He cites no case to support this proposition—those cases he cites reference the power to order release, not the standard for doing so. *See Johnston*, 227 F.2d at 528; *In re Kaine*, 55 U.S. 103 (1852). Petitioner says that "release on bail, solely for the pendency of proceedings, is a far cry from an ultimate determination on the petition." AB.73. That is a description of all preliminary injunctive relief. The purpose of habeas is securing release from detention; ordering release on bail is *preliminary* relief, which may be granted only upon a showing of likelihood of success on the merits, as *Winter* demands. OB.55.

Like the district court, Petitioner relies on *Lucas* as authorizing release on bail without assessing likelihood of success. AB.73-74. But Petitioner ignores how this

Court read *Lucas* in *Landano*, as holding only that release should not be granted "*solely on the ground that there is a high likelihood of success on the merits…*" 970 F.2d at 1241; *see* OB.55. That likelihood of success is not *sufficient* does not mean it is not necessary. OB.55. Petitioner says *Landano*'s standard, requiring a showing of a "substantial constitutional claim," 970 F.2d at 1239, should be limited to the "post-conviction criminal habeas context[]." AB.74. But he cites no case adopting that rationale, which is simply incompatible with *Landano*'s reasoning.

## CONCLUSION

The Court should reverse the district court and remand with instructions to dismiss this habeas action for lack of jurisdiction. Alternatively, the Court should vacate the preliminary injunction on the merits.

Dated: September 24, 2025

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General

YAAKOV M. ROTH
Principal Deputy Assistant Attorney
General

DREW C. ENSIGN
Deputy Assistant Attorney General

BENJAMIN HAYES
Senior Counsel to the Assistant Attorney
General

*/s/ Alanna T. Duong*
ALANNA T. DUONG
Senior Litigation Counsel
Office of Immigration Litigation
Civil Division, U.S. Dept. of Justice
PO Box 878, Ben Franklin Station
Washington, D.C. 20044
Tel: (202) 305-7040
alanna.duong@usdoj.gov

ERIKA ARCE-ROMERO
RACHEL L. BROWNING
ANIELLO DESIMONE
JOHN F. STANTON
Trial Attorneys

# CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing reply brief:

(1) complies with the type-volume limitation of Federal Rule of Appellate Procedure 32 and Third Circuit Rule 32.1, as modified by the Court's minute order of August 19, 2025, because it is proportionately spaced using Garamond 14-point font and contains 7,984 words, exclusive of tables of contents and authorities, and other items exempted by Federal Rule of Appellate Procedure 32(f);

(2) was scanned for viruses using the latest version of Microsoft CrowdStrike Falcon, as required by Third Circuit Rule 31.1(c), and no viruses or malware was detected; and,

(3) is identical to the text in the paper copies of the brief as required by Third Circuit Rule 31.1(c).

_/s/ Alanna T. Duong_
ALANNA T. DUONG
Senior Litigation Counsel
U.S. Department of Justice

September 24, 2025                    Attorney for Respondents-Appellants

## CERTIFICATE OF SERVICE

I hereby certify that on September 24, 2025, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Third Circuit by using the appellate CM/ECF system. I further certify that all participants in this case, including Petitioner's counsels, are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

/s/ Alanna T. Duong
ALANNA T. DUONG
Senior Litigation Counsel
U.S. Department of Justice