**Nos. 25-2162 & 25-2357**

---

**IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT**

---

Mahmoud KHALIL,

*Petitioner–Appellee,*

Donald J. TRUMP, in his official capacity as President of the United States;
William P. JOYCE, in his official capacity as Acting Field Office Director of
New York, Immigration and Customs Enforcement; Yolanda PITTMAN, in
her official capacity as Warden of Elizabeth Contract Detention Facility;
Todd LYONS, in his official capacity as Acting Director of Immigration and
Customs Enforcement; Markwayne MULLIN, in his official capacity as
Secretary of the Department of Homeland Security; Marco RUBIO, in his
official capacity as Secretary of State; and Todd BLANCHE, in his official
capacity as Acting Attorney General of the Department of Justice,

*Respondents–Appellants.*

---

**PETITIONER–APPELLEE'S MOTION TO STAY THE ISSUANCE OF THE
MANDATE PENDING THE FILING AND DISPOSITION OF A PETITION
FOR CERTIORARI TO THE UNITED STATES SUPREME COURT**

---

Petitioner–Appellee Mahmoud Khalil moves, pursuant to Federal Rule

of Appellate Procedure 41(d), for a stay of the mandate in this case pending

the filing and disposition of a petition for certiorari to the U.S. Supreme Court.

Absent a stay, under Rule 41(b), the mandate in this case will automatically

issue on Friday, May 29, 2026, at which time the district court's underlying orders—enjoining detention and removal on the foreign policy ground ("FPG") and granting release on bail pending adjudication of his habeas petition and complaint—will be formally dissolved, leaving Mr. Khalil at imminent risk of detention (and removal) before his claims may be considered by the U.S. Supreme Court.[1] Mr. Khalil respectfully requests that the Court stay the issuance of the mandate. Should the Court deny Mr. Khalil's request, he respectfully requests the Court issue an administrative stay of the mandate for 30 days (or any shorter period the Court deems equitable) to permit him to seek the same relief in the Supreme Court prior to the issuance of the mandate. Respondents oppose this request.

---

[1] On April 9, 2026, the Board of Immigration Appeals ("BIA") issued a final order of removal in Mr. Khalil's case, including on the ground barred by the district court's injunction here. *See* Pet. 28(j) Letter (Dkt. No. 152-2). Mr. Khalil has filed a petition for review ("PFR") of the BIA decision but continues to maintain that the administrative removal proceedings and PFR process cannot provide him with meaningful review of the claims he raises here and does not provide an adequate substitute for habeas. Pet. For Reh'g En Banc 10-26 (Dkt. No. 115-1). While he can file a motion for a stay of removal before the Fifth Circuit, the Fifth Circuit rarely ever grants such requests, JA1682; JA1687, and will not consider the request on an emergency basis unless Mr. Khalil has already been detained and has a scheduled deportation date, *see* Fifth Cir. L. R. 27.3.1 ("The court will give emergency consideration to stays of deportation only where the petitioner has a scheduled removal date and is in custody.").

**In light of the seven-day timeline for issuance of the mandate, Mr. Khalil respectfully requests that the Court rule on his motion at the earliest possible date, but at the latest within four days—by Tuesday, May 26—so that he can seek emergency relief in the Supreme Court, if necessary.**

\*    \*    \*

As explained below, Mr. Khalil satisfies the standard for the requested relief. The matters at issue in the split panel decision are weighty and consequential not only for Mr. Khalil but for untold numbers of noncitizens, the government, and the public. Indeed, this case has far-reaching implications about the government's power to effectuate censorship through immigration detention, the federal courts' authority in habeas, and the reach of various constitutional provisions, including the First and Fifth Amendments and the Suspension Clause. And, as the five votes in favor of rehearing en banc demonstrate, *see* Order Sur Petition for Reh'g n.1 (Dkt. No. 155), the divided panel's conclusions are subject to reasonable debate and potential conflict with upcoming decisions in the Second or Fourth Circuits; thus, certiorari and ultimate reversal are more than reasonable possibilities.

Further, while Mr. Khalil would suffer grave and irreparable harm with issuance of the mandate, the government would suffer none at all, as the panel in this case already recognized in denying the government's request to stay the bail order that set Mr. Khalil free. *See* Per Curiam Order (Case No. 25-2162) (Dkt. No. 41) (denying stay of bail order because the government had "not demonstrated irreparable harm" from being unable to detain Mr. Khalil during the pendency of his appeal). Indeed, Mr. Khalil has been released on bail for nearly a year now while these weighty legal proceedings played out, and the government has suffered no harm to its interests whatsoever. *See* Gov't Mot. for Extension of Time to File Resp. to En Banc Pet. 3 (Dkt. No. 149) (emphasizing lack of harm from additional delay of appellate proceedings). Given those equities, and the absence of any public interest in Mr. Khalil's detention while he seeks Supreme Court review, a stay of the mandate is warranted here.

## BACKGROUND

In March 2025, the government chose to target and detain Mr. Khalil explicitly for his speech and advocacy. JA1045-50. Within hours of his arrest, Mr. Khalil's lawyers filed a habeas petition in the Southern District of New

York challenging both his detention and deportation on various constitutional grounds, including the First and Fifth Amendments. JA1041 ¶ 54; JA1050-53.

After a transfer of Mr. Khalil's petition to the District of New Jersey, JA34-100, the district court issued a thorough opinion confirming its subject matter jurisdiction, JA101-208, and, on June 11, granted a preliminary injunction prohibiting Respondents from detaining or seeking to remove Mr. Khalil based on the determination of Secretary of State Rubio (the "Rubio Determination"), JA19-20; *see* JA209-309 (concluding that the FPG, as applied to Mr. Khalil through the Rubio Determination, is likely unconstitutionally vague). The court later determined that Respondents had taken actions in Mr. Khalil's immigration proceedings that were "directly inconsistent with" its injunction, JA25, and ordered Respondents to take certain steps to comply with its June 11 injunction, JA28-32. Meanwhile, on June 20—at which point Mr. Khalil had spent 104 days in detention, missing the birth of his first child—the district court held a bail hearing and ordered Petitioner's release pending the habeas proceedings. JA22-23; JA315-89. The court cited to extensive evidence of extraordinary circumstances to which Respondents had "opted to say nothing in response," JA369; *see* JA336,

JA351, JA370, JA386, and explained at length that the bail order satisfied the applicable standards, JA337-76.

On January 15, 2026, this Court issued a divided precedential opinion reversing the district court's orders based on its conclusion that, under 8 U.S.C. § 1252(b)(9), the district court lacked jurisdiction over Mr. Khalil's habeas petition. Op. (Dkt. No. 132). And today, the full Court denied, by a vote of 6 to 5, Mr. Khalil's petition for en banc review. Order (Dkt. No. 155).[2]

## ARGUMENT

Under Rule 41(d)(1), this Court may stay the mandate if a petition for certiorari will present "substantial questions" for Supreme Court review and there is otherwise "good cause." Fed. R. App. P. 41(d)(1); *see also Nara v. Frank*, 494 F.3d 1132, 1133 (3d Cir. 2007) (citing *Rostker v. Goldberg*, 448 U.S. 1306, 1308 (1980) (Brennan, J., in chambers)). To make this showing, a movant must demonstrate "a reasonable probability that the Supreme Court will grant *certiorari*", "a reasonable possibility that at least five Justices would

---

[2] On May 9, Mr. Khalil filed his PFR in the Fifth Circuit, but there is still no briefing schedule for that appeal, which could take many months or even more than a year—especially because of the need for additional fact development by a district court in light of the immigration courts' failure to allow an adequate record for Mr. Khalil's claims, *see* Op.35-36.

vote to reverse this Court's judgment," and "a likelihood of irreparable injury absent a stay." *Nara*, 494 F.3d at 1133. "In a close case, the movant should make a showing that, on balance, the interests of the parties and the public favor a stay." *Id.* (citing *Rostker*, 448 U.S. at 1308). As explained below, Mr. Khalil meets all versions of the applicable standards here.

## I.    Mr. Khalil's forthcoming petition for certiorari will present "substantial questions" for Supreme Court review.

While this Court has denied en banc review of the panel decision, five of 11 judges of the Court agreed that the issues raised by the case at least merited further review. And, for the same reasons presented in Mr. Khalil's petition for en banc review, Mr. Khalil's cert petition will present "substantial questions," Fed. R. App. P. 41(d)(1), and there is both "a reasonable probability" that the Supreme Court will grant Mr. Khalil's petition for certiorari and "a reasonable possibility" that a majority of the Supreme Court will reverse the decision of this Court.

### A.    The issues presented here are exceptionally important.

Mr. Khalil's cert petition will present multiple issues of exceptional importance. Under this Court's decision, federal officials may engage in retaliatory and punitive executive detention pending removal proceedings

with no recourse to federal review. This result conflicts with the meaning of 8 U.S.C. § 1252(b)(9) and the strong presumptions favoring judicial review, and it violates bedrock law of habeas corpus and the First Amendment.

First, the Supreme Court has repeatedly rejected an expansive reading of (b)(9) that would render claims outside the PFR process, specifically including detention claims, unreviewable. *See Johnson v. Guzman Chavez*, 594 U.S. 523, 533 n.4 (2021) (citation omitted); *DHS v. Regents of the Univ. of Cal.*, 591 U.S. 1, 19 (2020); *Nielsen v. Preap*, 586 U.S. 392, 402 (2019); *Jennings v. Rodriguez*, 583 U.S. 281, 293 (2018). In particular, the result in *Jennings* was based on the understanding that, by the time a final order of removal is entered in an immigration case, setting up a PFR, the unconstitutional detention "would have already taken place" such that the petitioner would be deprived of any "meaningful chance for judicial review." 583 U.S. at 293. By determining that long-delayed PFR review of Mr. Khalil's claims—including his detention claim—is "meaningful" under (b)(9), the Court's opinion could deprive federal courts of habeas jurisdiction in a wide

array of cases challenging unconstitutional government conduct, with far-reaching consequences for noncitizens.

Second, the Supreme Court has repeatedly affirmed the availability of the writ of habeas corpus to review detention claims like the one presented here—and, indeed, the protections of habeas are at their strongest when it comes to executive detention. *See Boumediene v. Bush*, 553 U.S. 723, 783 (2008); *INS v. St. Cyr*, 533 U.S. 289, 301, 314 (2001). But a PFR that only allows Mr. Khalil to challenge his illegal detention months or years *after* its retaliatory chilling of speech or punitive purpose has been effectuated, without an opportunity to actually remedy the illegal detention, is not an adequate or effective alternative to habeas and violates the Suspension Clause. *See* Pet. for Reh'g En Banc 25-30. And the fact that detention and removal claims are raised together in Mr. Khalil's habeas petition is no reason to strip or suspend habeas review; if anything, it demonstrates why both require review *now*. *See Trump v. J.G.G.*, 604 U.S. 670, 672 (2025) ("[C]laims for relief" that "necessarily imply the invalidity of [one's] confinement and

removal . . . fall within the core of the writ of habeas corpus." (citation modified)).[3]

Third, the Supreme Court has also repeatedly affirmed the necessity of speedy review of First Amendment claims such as the ones presented here in a variety of different contexts, out of a concern with the irreparable nature of First Amendment harms. JA183-88 ("Our law's response to a here-and-now impact on political speech has been the same across the board: no unnecessary delay." (discussing cases)); *see, e.g., First Choice Women's Res. Ctrs., Inc. v. Davenport*, No. 24-781, 2026 WL 1153029 (U.S. Apr. 29, 2026); *Fort Wayne Books, Inc. v. Indiana*, 489 U.S. 46, 55-56 (1989); *Oesterich v. Selective Serv. Sys. Local Bd. No. 11*, 393 U.S. 233 (1968); *Nat'l Socialist Party of Am. v. Vill. of Skokie*, 432 U.S. 43, 44 (1977); *Dombrowski v. Pfister*, 380 U.S. 479, 487 (1965); *cf. Axon Enter., Inc. v. FTC*, 598 U.S. 175, 191 (2023);

---

[3] In opposing en banc review, the government incorrectly represented that Mr. Khalil had "forfeited" his Suspension Clause argument. Dkt. 153 at 24. It is true that, as the government acknowledges, "the district court did not independently assess whether the Government's interpretation of §1252(b)(9) violates the Suspension Clause," Dkt. 153 at 24—because it did not have to, after concluding that the government's interpretation was incorrect as a matter of statutory interpretation. JA112-54. In any event, Mr. Khalil raised the Suspension Clause in his petition and briefing, and the panel reached the issue. Op.34; Dkt. 115-1 at 43-46; D.N.J. ECF 175 at 8 n.4; JA1032.

*see also Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 492 (1999) (Ginsburg, J., concurring) ("*AADC*"). By foreclosing habeas review of Mr. Khalil's constitutional challenges to detention and removal, and delaying federal court review for many months or even years while government censorship and chill continues to accrue, the Court's interpretation of section 1252(b)(9) violates the First Amendment. *See* Pet. for Reh'g En Banc 31-32, 34 n.15.

These issues are both momentous and worthy of Supreme Court review. If the panel opinion is correct, the government has an enormous power to retaliate against those whose speech it does not like by targeting its perceived enemies with immigration detention and removal proceedings, knowing all the while that no federal court can halt it from accomplishing its goals before its own administrative process is complete. That result would badly dilute the Supreme Court's own interpretation of (b)(9) as well as two bedrock constitutional protections in the Suspension Clause and the First Amendment—and whether Congress intended that damage in a federal statute is very much the kind of extraordinary question that frequently merits Supreme Court review.

**B.    This Court's decision conflicts with decisions of other circuits and the Supreme Court.**

Mr. Khalil's cert petition will also identify a conflict between the decision of this Court and the holdings of sister circuits and the Supreme Court as to the meaning of section 1252(b)(9).

First, this Court's conclusion that (b)(9) bars detention claims conflicts with decisions from the First and Second Circuits, as well as the Supreme Court. *See* Pet. for Reh'g En Banc 10-23. As the First Circuit has explained, (b)(9) "excludes claims that are independent of, or wholly collateral to, the removal process"—and "detention claims are 'independent of challenges to removal orders.'" *Aguilar v. ICE,* 510 F.3d 1, 11 (1st Cir. 2007) (quoting H.R. Rep. No. 109-72, at 175, *reprinted in* 2005 U.S.C.C.A.N. at 300); *see Öztürk v. Hyde,* 136 F.4th 382, 399 (2d Cir. 2025) (denial of stay pending appeal). As explained above, this Court's decision also conflicts with the Supreme Court's precedent regarding (b)(9). *See Guzman Chavez,* 594 U.S. at 533 n.4; *Preap,* 586 U.S. at 402; *Jennings,* 583 U.S. at 293; *Regents,* 591 U.S. at 19.

Second, this Court's interpretation of section (b)(9) to apply to claims arising prior to a final order of removal conflicts with the precedent of four other circuits. *See* Pet. for Reh'g En Banc 8-10 (discussing *Öztürk,* 136 F.4th

at 399 ; *Suri v. Trump*, 2025 WL 1806692, at \*9 (4th Cir. July 1, 2025); *Casa de Maryland v. DHS*, 924 F.3d 684, 697 (4th Cir. 2019); *Singh v. Gonzales*, 499 F.3d 969, 978 (9th Cir. 2007); *Madu v. U.S. Att'y Gen.*, 470 F.3d 1362, 1367 (11th Cir. 2006)).

\*    \*    \*

Under Rule 41(d)(1), the identified legal issues that Mr. Khalil will present in a petition for certiorari are clearly "substantial." *See Nara*, 494 F.3d at 1133. These issues are highly consequential both for the government and for noncitizens in the United States and are a matter of divided opinion among the courts of appeals. For the reasons given in Mr. Khalil's petition for en banc review, the panel decision erred in resolving them—but even if, in the end, it did not, Mr. Khalil's petition will still be worthy of Supreme Court review. That petition is reasonably likely to attract four Justices' votes for certiorari, and, given the conflicts the panel decision creates with the aforementioned courts and the Supreme Court, there is at least a reasonable possibility that Mr. Khalil's position will ultimately prevail before the Court on one or all of them. Moreover, the same issues are currently pending before sister courts of appeal, and opinions from those courts could create an even clearer circuit split that would make Supreme Court review even more likely.

*See Mahdawi v. Trump,* No. 25-1113 (2d Cir. argued Sep. 30, 2025); *Suri v. Trump,* No. 25-1560 (4th Cir. argued Mar. 17, 2026).

## II.    There is "good cause" to stay the mandate in Mr. Khalil's circumstances.

There is "good cause" for Mr. Khalil's request. Fed. R. App. P. 41(d)(1); *see Nara,* 494 F.3d at 1133. Because the BIA has issued a final removal order against Mr. Khalil, this Court's mandate is all that stands between him and re-detention (and possible removal). The harms to Mr. Khalil and his family from the denial of a stay, including that re-detention, are obviously irreparable. Re-detention would re-inflict irreparable constitutional harm by further silencing his protected speech, *see Elrod v. Burns,* 427 U.S. 347, 373 (1976); JA372-73, and re-subjecting him to unconstitutional detention that is not even purportedly premised on flight risk or danger to the community, *Zadvydas v. Davis,* 533 U.S. 678, 690 (2001); JA367-72. Re-detention would also immensely harm Mr. Khalil's family, re-separating him from his wife and infant son; *see Hernandez v. Sessions,* 872 F.3d 976, 996 (9th Cir. 2017) (burden on families caused by "unnecessary detention" relevant to equities). And his re-detention would seriously frustrate his "ability to participate meaningfully in [his] habeas proceedings" during the certiorari period, after

14

he has been free to actively assist his lawyers in this matter without restriction for almost a year, *see Öztürk,* 136 F.4th at 402; *accord Mahdawi v. Trump,* 136 F.4th 443, 455 (2d Cir. 2025).

This is not a "close case" for purposes of the standard for staying the mandate, but even if it were, Mr. Khalil also "make[s] a showing that, on balance, the interests of the parties and the public favor a stay." *Nara,* 494 F.3d at 1133. While the harm Mr. Khalil stands to suffer is grave and irreparable, the government suffers no harm from a stay, and "there is a very strong and uncontested record here as to lack of flight risk and lack of dangerousness." JA336; *see* Per Curiam Order (denying stay of bail order because the government had "not demonstrated irreparable harm" from being unable to detain Mr. Khalil during the pendency of his appeal); *see also Öztürk,* 136 F.4th at 401-03 (denying stay in part because the government "failed to show an irreparable injury" stemming from habeas petitioner's release on bail); *Mahdawi,* 136 F.4th at 454-55 (same); *Suri,* 2025 WL 1806692, at *9 (same). Moreover, during the 104 days Mr. Khalil spent in immigration detention, he already suffered grievously by missing the birth of his first child. Since last June, though, this entire case has been litigated with Mr. Khalil out of detention, and the government has suffered no harm from

that status quo. *See* Gov't Mot. for Extension of Time to File Resp. to En Banc Pet. 3 (emphasizing lack of harm from additional delay of appellate proceedings). Furthermore, given that Mr. Khalil's habeas petition asserts that the very reason the government sought to detain him (and presumably would re-detain him if it could) was to censor his and others' lawful speech, it would be perverse to allow the government to effectuate that censorship through the prior restraint of detention. *See* JA187-88; *Am. Ass'n of Univ. Professors v. Rubio,* 802 F. Supp. 3d 120, 194 (D. Mass. 2025).

Finally, the public has no interest whatsoever in forcing a young father to a U.S. citizen baby, who prevailed in the district court on a serious constitutional challenge, to re-enter detention before exhausting his appeals to the Supreme Court. And the public *does* have a strong interest in ensuring that the constitutional rights of lawful permanent residents like Mr. Khalil are protected and that the government cannot unlawfully censor speech. While the merits of Mr. Khalil's claims are not on appeal, it remains the case that a federal court has deemed a ground of his removal to likely be unconstitutional and his detention unjustified and extraordinary. The status quo prior to the controversy at the heart of this case was that lawful permanent residents like Mr. Khalil could not be detained and targeted for deportation by federal

officials because of their protected speech on American campuses. To permit the government to resume its efforts before Supreme Court review is sought would compound the grave constitutional harms of censorship and broad chill of First Amendment rights that Mr. Khalil's habeas petition was filed to prevent. *See* Dkt. No. 155 at 14 (Krause, J., dissenting sur denial of reh'g en banc) ("Khalil may well have no bite at the apple."); *see also Öztürk,* 136 F.4th at 403 (concluding with "little difficulty" that the balance of hardships and public interest favored habeas petitioner in denying government motion to stay release on bail); *Mahdawi,* 136 F.4th at 455 (similar); *Suri,* 2025 WL 1806692, at *9 (similar, relying in part on the potential for "further chill [of] speech protected by the First Amendment").

## CONCLUSION

The Court should, pursuant to Federal Rules of Appellate Procedure 41(d), stay the mandate in these appeals pending the filing and disposition of a petition for certiorari to the U.S. Supreme Court. If the Court does not stay the mandate for this period, the Court should issue an administrative stay of the mandate for 30 days (or any shorter period the Court deems

equitable) to permit him to seek the same relief in the Supreme Court prior to the issuance of the mandate.

Dated: May 22, 2026                    /s/ Brett Max Kaufman

AMERICAN CIVIL LIBERTIES UNION OF
NEW JERSEY FOUNDATION
Jeanne LoCicero
Farrin R. Anello
Molly K.C. Linhorst
Liza Weisberg
570 Broad Street, 11th Floor
Newark, New Jersey 07102
Tel: (973) 854-1715

NEW YORK CIVIL LIBERTIES UNION
FOUNDATION
Amy Belsher
Robert Hodgson
Veronica Salama
Molly Biklen
125 Broad Street, 19th Floor
New York, N.Y. 10004
Tel: (212) 607-3300

AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
Omar Jadwat
Noor Zafar
Michael K.T. Tan
Sidra Mahfooz
Brian Hauss
Esha Bhandari
Brett Max Kaufman

CENTER FOR CONSTITUTIONAL RIGHTS
Baher Azmy
Samah Sisay
Diala Shamas
666 Broadway, 7th Floor
New York, NY 10012
Tel: (212) 614-6464

CLEAR PROJECT
MAIN STREET LEGAL SERVICES, INC.
Naz Ahmad
Mudassar Hayat Toppa
Shezza Abboushi Dallal
CUNY School of Law
2 Court Square
Long Island City, NY 11101
Tel: (718) 340-4558

WASHINGTON SQUARE LEGAL SERVICES,
INC.
Alina Das
Kyle Barron
Immigrant Rights Clinic
245 Sullivan Street, 5th Floor
New York, New York 10012
Tel: (212) 998-6430

DRATEL & LEWIS
Amy E. Greer

125 Broad Street, 18th Floor
New York, NY 10004
Tel: (212) 549-2500

29 Broadway, Suite 1412
New York, NY 10006
Tel: (212) 732-8805

VAN DER HOUT LLP
Marc Van Der Hout
Johnny Sinodis
Oona Cahill
360 Post St., Suite 800
San Francisco, CA 94108
Tel: (415) 981-3000

*Counsel for Petitioner–Appellee*

## **CERTIFICATE OF BAR MEMBERSHIP**

Pursuant to Local Rule 28.3(d) and Local Rule 46.1(e), I certify that I am admitted as an attorney and counselor of the United States Court of Appeals for the Third Circuit.

/s/ Brett Max Kaufman
Brett Max Kaufman
*Counsel for Petitioner–Appellee*

## CERTIFICATE OF SERVICE

I hereby certify that on May 22, 2026, I electronically filed the foregoing document with the Clerk of the United States Court of Appeals for the Third Circuit by using the CM/ECF system. All counsel of record in this case are registered CM/ECF users.

/s/ Brett Max Kaufman

Brett Max Kaufman

*Counsel for Petitioner–Appellee*

## <u>CERTIFICATE OF COMPLIANCE</u>

I hereby certify that the foregoing brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 27(d)(2)(A) because it contains 3,544 words, and it complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 27(d)(1)(E) because it has been prepared in a proportionally spaced typeface using Microsoft Word's 14-point Charter typeface.

*/s/ Brett Max Kaufman*
Brett Max Kaufman
*Counsel for Petitioner–Appellee*

## <u>ANTI-VIRUS CERTIFICATION</u>

I certify that an electronic copy of this brief was scanned for viruses using Windows Security anti-virus (version 1.435.67.0) and no virus was detected.

<u>*/s/ Brett Max Kaufman*</u>
Brett Max Kaufman
*Counsel for Petitioner–Appellee*